**Bradford GUCCIONE, Appellant,**

v.

**RAY'S TREE SERVICE, and Division of Employment Security, Respondents.**

No. ED 93097.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 26, 2010.

Portia C. Kayser, John J. Ammann, St. Louis University law Clinic, St. Louis, MO, for Appellant.

Ray's Tree Service, Valley Park, MO, pro se.

Shelly A. Kintzel, Dept. of Labor and Indus. Relations, Div. of Employment Sec., Jefferson, MO, for Respondent Div. of Employment Sec.

KURT S. ODENWALD, Presiding Judge.

## Introduction

Bradford Guccione (Claimant) appeals from the judgment of the Labor and Industrial Relations Commission (Commission), denying Claimant unemployment benefits. The Commission adopted the decision of the Appeals Tribunal, which reversed the deputy of the Division of Employment Security's (Division) decision entitling Claimant to unemployment benefits. The Division found that the Claimant was discharged for reasons other than misconduct connected with work. The Division further found that the employer did not provide specific information to the Division regarding employer's belief that Claimant was insubordinate when given the opportunity to do so. We reverse the Commission's decision to disqualify Claimant from receiving unemployment benefits and remand the case for entry of an appropriate award.

## Factual and Procedural Background

Claimant, an employee of Ray's Tree Service, Inc. (Employer), began working for Employer on June 18, 2008, as a climber, either trimming or removing trees. Claimant testified that he had been doing tree-climbing work for twenty-five years. Employer's Vice President, Don Mohler (Mohler), testified that when Claimant went on job sites, it was clear to Employer that he knew how to use the ropes and "move in the tree safely."

On October 24, 2008, Claimant set out to prune a silver maple or Bradford pear tree with his driver/supervisor, Louis Williard (Williard), who does not climb at all. Williard testified that he explained to Claimant the job situation, which included some light trimming and small limb removals. Williard testified that the tree was about 30 to 40 feet tall, and Claimant probably had to climb 20 to 25 feet. Claimant testified that the tree was about 80 feet tall, and that he had to climb "all the way to the top of the tree to cut the tips off the end of the limbs that were dead." Claimant testified that the tree had been topped before and had several shoots growing out from where it had been cut previously, with no strong lateral limbs on them.

Claimant informed Williard that he could not do the job unless he wore his spikes. Williard told Claimant that he was not allowed to wear spikes because he could cause damage to the tree. Williard said that Claimant "threw a little fit a little bit," and Williard called his supervisor, Mohler, to make him aware of the situation.

Mohler told Williard to remind Claimant that he was not permitted to use climbing spikes when pruning a tree. Mohler also told Williard that if Claimant could not do the job correctly, then he was not able "to do the job period." However, Williard testified that before he concluded his call to Mohler, Claimant had already climbed the tree, partially with a ladder and partially with spikes. Williard said Claimant was using the chain saw, so it took a few minutes to catch Claimant's attention after the call to Mohler. When Williard told Claimant to come down from the tree, Claimant "was up there in the tree cursing at [Williard] about it." Williard testified that when the homeowners came outside and voiced their objections with the work Claimant was doing, Claimant finally came out of the tree. Williard called again on the radio and told Mohler that Claimant had used the climbing spikes when he climbed the tree. Mohler told them to leave the job site.

Claimant testified that he put the ladder in the tree, and stood beneath the tree, talking to the homeowner and waiting for Williard to finish talking to Mohler before climbing the tree. Claimant said that Williard returned and stated that the job had to be done that day and there was no one else to do it. Claimant testified that he knew he was not allowed to wear spikes on live trees on the day in question. Claimant said Williard did not discuss the spikes with him, but Claimant told Williard that if he had to do the job, he had to wear spikes. Claimant added that the homeowner did not seem to have a problem with the spikes. Claimant put on the spikes and climbed the tree. He said he limited his use of the spikes to that which the job required. He said that the female homeowner eventually came out and began complaining about Claimant cutting too much green off the tree, so Claimant came down from the tree. Having nearly completed the job, Claimant told Williard he was finished, and Claimant simply moved on to the next job that day. Later that afternoon, Mohler took another climber back to complete the work that Claimant had not completed.

Williard testified that when Claimant was on a previous job site, Williard saw him in a tree with spikes when Claimant was not supposed to be wearing them, and Williard informed Claimant's supervisor. Mohler said that he had previously told Claimant that climbing spikes were not permitted while pruning a tree, but Mohler did not explain to Claimant why they were prohibited because Mohler assumed that Claimant was aware of the practice. Mohler testified that Employer adheres to the American National Standard for Tree Care Operations guidelines, set forth by the Tree Care Industry, because climbing spikes cause damage to the trees and can spread disease that may ultimately kill the trees.

Claimant was discharged by Employer on October 27, 2008. Mohler testified that when he discharged Claimant, he informed Claimant that Employer would not be able to use employees who did what they wanted rather than what they were told. The only explanation Mohler heard from Claimant was that "he was not able to do the work without using the spikes."

On December 3, 2008, the deputy of the Division mailed its decision to Claimant, granting Claimant benefits because "Employer did not provide specific information to the Division when given the opportunity" regarding Employer's belief that Claimant was insubordinate. The deputy found that Claimant was not disqualified from benefits because the discharge was "not for misconduct connected with work." On December 10, 2008, Employer appealed the deputy's decision.

On January 14, 2009, the Appeals Tribunal held a telephone conference on the appeal, at which time Claimant, Mohler, and Williard relayed the above sequence of events. On January 23, the Appeals Tribunal reversed the deputy of the Division's decision. The Appeals Tribunal found that Claimant worked for several months for Employer before he was discharged for insubordination. The Appeals Tribunal's findings of fact stated that Claimant was previously warned that he was not to use climbing spikes to trim live trees, but on October 24, 2008, Claimant disregarded those instructions and trimmed a tree while wearing climbing spikes. Pursuant to Section 288.030(23) and Section 288.050.2, RSMo Cum.Supp.2008, regarding misconduct connected with a claimant's work, the Appeals Tribunal concluded that Claimant was "discharged for violation of a known reasonable employer policy or rule" and thus, was discharged for misconduct connected with work.

Claimant filed his timely application for review with the Commission on February 11, 2009. On May 19, 2009, the Commission affirmed and adopted the Appeals Tribunal's decision "because it is fully supported by the competent and substantial evidence on the whole record and it is in accordance with the relevant provisions of the Missouri Employment Security Law."

One of the three commissioners filed a dissenting opinion, stating that Claimant was faced with a judgment call, weighing his own safety against Employer's directive to get the job done against its rule prohibiting Claimant from using spikes to climb the live tree. Citing *Murphy v. Aaron's Automotive Products*, 232 S.W.3d 616, 621 (Mo.App. S.D.2007), the dissent found that "an exercise of poor judgment is not an act involving the type of intentional behavior encompassed within the definition of misconduct connected with work." The dissent was not persuaded that Employer met its burden of proving Claimant's misconduct.

On June 12, 2009, Claimant filed his notice of appeal with this Court. This appeal follows.

## Point on Appeal

In his sole point on appeal, Claimant alleges that the Commission erred in denying unemployment benefits to Claimant under Section 288.050.2 because Employer failed to meet its burden of proof that Claimant committed misconduct by willfully violating the rules or standards of the employer or knowingly acting against the employer's interests. Claimant argues that the rule was unreasonable when applied to these circumstances, Claimant's refusal was reasonable when he told the employer the work could not be completed safely without the use of climbing spikes, and Claimant was acting in the employer's interest by attempting to complete the job when there was no one else available.

## Standard of Review

Appellate review of an award made by the Labor and Industrial Relations Commission is governed by Section 288.210, RSMo 2000.[1] According to the statute, this Court's jurisdiction is limited to questions of law. *Id.* This Court will affirm the Commission's decision unless: the Commission acted without or in excess of its powers; the award was procured by fraud; the facts do not support the award; or there was not sufficient competent evidence in the record to warrant the award. Section 288.210.

While deference is paid to the Commission's findings of fact, this Court does not

1. All subsequent statutory citations are to RSMo 2000, unless otherwise indicated.

defer to the Commission's conclusions of law. *Div. of Employment Sec. v. Taney County Dist. R–III*, 922 S.W.2d 391, 393 (Mo. banc 1996). An appellate court reviews issues of law de novo. *Difatta–Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008). Whether an employee's actions are misconduct related to work is a question of law. *Freeman v. Gary Glass & Mirror, L.L.C.*, 276 S.W.3d 388, 391 (Mo.App. S.D.2009). The appellate court gives deference to the Commission's resolution of conflicting evidence regarding a factual issue, the weighing of evidence, and witness credibility. *Id., citing Burns v. Labor & Indus. Rel. Comm'n*, 845 S.W.2d 553, 555 (Mo. banc 1993). Whether a claimant's conduct is considered misconduct in connection with his work is a legal question to which we do not defer to the Commission's determination. *Dixon v. Stoam Industries, Inc.* 216 S.W.3d 688, 692 (Mo.App. S.D.2007).

## Discussion

The purpose of Missouri's unemployment compensation act is to provide benefits to persons who are unemployed through no fault of their own. *Kelley v. Manor Grove, Inc.*, 936 S.W.2d 874, 876 (Mo.App. E.D.1997). For this reason, the disqualifying provisions of the act "are to be strictly construed against the disallowance of benefits to unemployed but available workers." *Mo. Div. of Employment Sec. v. Labor & Indus. Relations Comm'n of Mo.*, 651 S.W.2d 145, 148 (Mo. banc 1983). One such disqualifying provision denies benefits to claimants "[i]f a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work." Section 288.050.2, RSMo Cum. Supp.2008. In such a case, the claimant:

shall be disqualified for waiting week credit and benefits, and no benefits shall be paid nor shall the cost of any benefits be charged against any employer for any period of employment within the base period until the claimant has earned wages for work insured under the unemployment laws of this state or any other state as prescribed in this section.

Section 288.050.2, RSMo Cum. Supp.2008.

For purposes of this determination, "misconduct" is defined as:

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Section 288.030.1(23), RSMo Cum. Supp. 2008. The burden of proving eligibility for unemployment benefits initially lies with the claimant, but where an employer alleges that a claimant was fired for misconduct, the employer bears the burden of demonstrating misconduct by a preponderance of the evidence; the employer must show that the employee willfully violated the rules or standards of the employer, or that he knowingly acted against the employer's interests. *Dobberstein v. Charter Communications, Inc.*, 241 S.W.3d 849, 852 (Mo.App. E.D.2007).

An employee's violation of a work rule, which may justify his discharge, does not in and of itself warrant a determination of misconduct that would disqualify the employee from receiving unemployment benefits. *Berwin v. Lindenwood Female College*, 205 S.W.3d 291, 295 (Mo. App. E.D.2006). "Poor workmanship, lack of judgment or the inability to do the job does not disqualify a claimant from receiv-

ing benefits on the basis of misconduct." *Freeman,* 276 S.W.3d at 391, *quoting Powell v. Div. of Employment Sec.,* 669 S.W.2d 47, 51 (Mo.App.1984).

Claimant argues that Employer failed to meet its burden of proof that Claimant committed misconduct by willfully violating the rules or standards of Employer or knowingly acting against Employer's interests. Employer argues, on the other hand, that Claimant intentionally disregarded the rule against using spikes on live trees when he climbed the tree wearing spikes while his supervisor was on the phone, or climbed with spikes directly after being told by his supervisor that he was not to use spikes. Employer argues that, although there was no "explicit credibility determination" on this contradictory evidence in the record, "the result of the Commission's decision indicates that it resolved credibility in favor of Employer." We disagree with Employer based upon the record before us. Absent any findings of credibility by the Commission, and without further detailed findings of fact, we are unable to conclude that Claimant's conduct justified dismissal on the basis of misconduct.

The Commission determines the weight of and credibility of the evidence, and, when that evidence conflicts, the Commission's determination of the facts is conclusive. *Peck v. La Macchia Enters.,* 202 S.W.3d 77, 82 n. 6 (Mo.App. W.D.2006). "However, the Commission may not 'disregard or ignore undisputed testimony of a witness not shown to have been impeached or disbelieved by the agency.' " *Id.* (internal citations omitted). "Only when the Commission finds it to be unbelievable or not credible, is it free to ignore such evidence or testimony." *Id.*

Here we show deference to the Commission's findings of fact, which were those facts found by the Appeals Tribunal and adopted by the Commission. The Appeals Tribunal's only findings of fact stated:

The claimant worked for the employer as a tree trimmer for several months until October 27, 2008. The claimant was then discharged for insubordination.

The claimant was previously told and warned that he was not to use climbing spikes to trim live trees. On October 24, 2008, the claimant disregarded these instructions and trimmed a tree while wearing climbing spikes.

Despite the Appeals Tribunal's findings that Claimant "disregarded" the instructions given regarding the use of climbing spikes, we fail to find sufficient evidence on the record that Claimant had other suitable options. We do not find substantial evidence that Claimant acted willfully, or in wanton disregard of Employer's interests when he chose to climb the live tree with spikes. There is no evidence in the record that contradicts Claimant's testimony that climbing with spikes was the only way he knew how to safely complete the job, which was in the best interest of Employer and Claimant. No evidence exists in the record that Employer gave Claimant other recommendations as to how to complete the job safely without the use of climbing spikes, or that the job could in fact be completed safely by another worker without using climbing spikes.[2] Even by resolving the conflicting facts in favor of Employer and finding that Claimant did not wait to climb the tree until Williard returned from calling Mohler about the situation, and that Claimant threw a fit or cursed at Williard, we still

---

**2.** Although testimony exists that another climber was able to finish the job without using climbing spikes the same day, other testimony establishes that Claimant nearly completed the job, changing the scope of the work, prior to that time.

do not find competent and substantial evidence that Claimant willfully disregarded Employer's interests or willfully disregarded the standards of behavior that Employer expected of Claimant.[3] Claimant's testimony that he could not perform the job safely without climbing spikes was undisputed in the record. The record lacks any evidence that Claimant's belief was either insincere or unreasonable. Thus, given the facts found by the Appeals Tribunal and adopted by the Commission, the application of the law to such facts do not warrant a determination that would disqualify Claimant from receiving unemployment benefits as Claimant was left to make a judgment call as to which imperfect action to take.

We agree with Claimant that this case is similar to *Peck*, 202 S.W.3d at 82. In *Peck*, the appellate court held that the claimant's refusal to comply with a work directive to increase her responsibilities was reasonable and therefore was not considered misconduct. The claimant refused to comply with her employer's demand without additional compensation, which the court compared to a voluntary quitting with good cause. *Id.* Had the claimant quit, she would have been eligible for unemployment benefits because she had good cause based on the changes in conditions at work. *Id.* We acknowledge that while Claimant here was not facing the same decision as in *Peck*, Claimant similarly was justified in refusing to meet Employer's questionable demand to climb the tree without spikes, and thereby putting himself in danger. As in *Peck*, had Claimant walked away from the job because of Employer's demands, Claimant would have been eligible for his unemployment benefits for quitting for good cause, i.e. protecting Claimant's personal safety.

This case is unlike *Dixon v. Stoam Indus., Inc.*, 216 S.W.3d 688 (Mo.App. S.D. 2007), in which the claimant refused to comply with a lawful and reasonable directive from a supervisor when the claimant said he "wasn't going to stop what [he] was doing" to comply. *Id.* at 692. Looking to the term "insubordination," defined as "a willful disregard of express or implied direction or a defiant attitude," and noting its synonyms, "rebellious," "mutinous" and "disobedient," the appellate court determined that the claimant indeed had been insubordinate and was not entitled to unemployment benefits because he was terminated for his misconduct. *Id.* at 693–94. Evidence of a willful intent to violate the employer's rules is what distinguishes misconduct from poor workmanship or lack of judgment. *Freeman*, 276 S.W.3d at 393. Here, Claimant's actions did not consist of misconduct because, even though he knew that climbing with spikes was contrary to Employer's policy, no evidence exists that his intent was to act "rebellious" or "disobedient." The evidence here demonstrates that Claimant intended merely to act safely, given his many years of experience.

Furthermore, Employer's own testimony that Employer follows the American National Standard for Tree Care Operations guidelines, set forth by the Tree Care Industry, contradicts Employer's allegation that Claimant deliberately violated a known policy, because the guidelines, in fact, provide exceptions that allow a climber to use the climbing spikes when "there are no other practical means of

---

3. We acknowledge that Employer presented testimony from Mohler that Claimant was not to do the tree trimming if he could not perform the job with wearing tree spikes. However, the record also shows that this instruction was conveyed to Claimant after Claimant had already climbed the tree with tree spikes, and that Claimant came down from the tree after being informed of Mohler's decision by Williard.

climbing the tree."[4] "Tree, Shrub and Other Woody Plant Maintenance—Standard Practices," *American National Standard for Tree Care Operations* § 5.7.2.2.1 (1995). The guidelines establish first that the national standard practice makes it reasonable to provide exceptions to the rule against climbing spikes, and second that Employer's contrary policy is unreasonable. Further, the guidelines demonstrate that Claimant did not willfully violate the national standard practice because he, in fact, complied with the guidelines' exception. Employer did not prove by a preponderance of the evidence that Claimant's actions warranted a determination that would disqualify Claimant from receiving unemployment benefits.

Because Employer has failed to meet its burden of showing that Claimant engaged in misconduct by willfully violating Employer's work rule, Claimant is not disqualified under Section 288.050.2 from receiving unemployment benefits. Claimant's point on appeal is granted.

### Conclusion

The Commission erred in finding that Claimant's actions amounted to misconduct and disqualified him from receiving unemployment benefits. Accordingly, we reverse the Commission's Judgment and remand the case for entry of an appropriate award.

GEORGE W. DRAPER III and GARY M. GAERTNER, JR., JJ., concur.

---

4. Although Section 5.2.4.4 of the *American National Standard for Tree Care Operations* guidelines states that "[c]limbing spurs should not be used when climbing trees, except as specified elsewhere in this standard," Section 5.7.2.2.1 provides that "[c]limbing spurs may be used when limbs are more than throw line distance apart, or when the bark is thick enough to prevent damage to the cambium, or there are no other practical means of climbing the tree." "Tree, Shrub and Other Woody Plant Maintenance—Standard Practices," *American National Standard for Tree Care Operations* §§ 5.2.4.4, 5.7.2.2.1 (1995).