Virgil WALKER, Appellant,

v.

DIVISION OF EMPLOYMENT SECURITY, Respondent.

No. WD 71876.

Missouri Court of Appeals, Western District.

March 1, 2011.

---

1. All statutory references are to RSMo (2004).

Virgil Walker, Appellant pro se.

Shelly A. Kintzel, Esq., Jefferson City, MO, for respondent.

Before JOSEPH M. ELLIS, P.J., and ALOK AHUJA and KAREN KING MITCHELL, JJ.

ALOK AHUJA, Judge.

Virgil Walker was an employee of Adesa St. Louis, Inc. He was terminated in July 2009. Walker applied for unemployment compensation. A deputy within the Department of Labor and Industrial Relations' Division of Employment Security found that Walker was entitled to unemployment benefits. The Appeals Tribunal reversed, however, finding that Walker committed misconduct related to his work. The Labor and Industrial Relations Commission affirmed the Tribunal's decision by a 2–1 vote. Walker appeals. On appeal, the Department of Labor and Industrial Relations concedes that the Commission's decision is not supported by sufficient competent evidence in the record. We agree, and reverse.

### Factual Background

Virgil Walker worked for Adesa as a driver in a vehicle auction lot in Belton. He began working for Adesa in May 2003. On February 17, 2009, Walker left work early without notifying his supervisor in advance. As a consequence, he received a "Corrective Action and Discipline Notice," which stated that management had discussed with him the requirement that he notify a supervisor before leaving work early. Walker signed this form and checked the box indicating "I agree with statement above."

Walker worked almost twelve hours on June 29, 2009. He testified that the vehicle in which he was working did not have functioning air conditioning, and that it was "108 degrees heat index out there on ... the blacktop." Walker felt "kind of

sick," and "went home heat exhausted" at the end of his work day. On June 30, 2009, Walker was at work as usual, but after ten hours on the job, he became "kind of woozy" and "fatigued" due to the heat. Walker testified that he checked in the office for manager Toni Braiden. He did not find Ms. Braiden in her office. Further, Walker testified that his immediate supervisor, Timothy Liberty, was on vacation. Walker accordingly informed Jerry Kerry, who Walker believed to be in charge in Braiden and Liberty's absence, that he was sick and leaving early.

On July 1, Walker again left work early, again after working approximately ten hours. The circumstances surrounding Walker's departure from work on July 1 are not developed in the record.

On July 2, 2009, Adesa issued another Corrective Action and Discipline Notice, suspending Walker without pay for "walk[ing] off the job . . . without informing his Supervisor" on June 30 and July 1. Adesa subsequently terminated Walker on July 6.

A Division deputy determined that Walker was not disqualified for benefits because Adesa failed to establish that he was discharged for misconduct. Adesa appealed. Following a telephone hearing, a referee held that Walker had committed misconduct. The referee found that Walker "left June 30, 2009 midway through [his] regular eight-hour shift without making contact with [his] supervisor." The referee also noted that "[n]o evidence showed he had been unable or too sick to leave a note, or phone the supervisor when he got home." The referee concluded that "the employer had a reasonable right to expect [Walker to] keep his written promise to tell his supervisor when leaving early. He made no effort to keep that prom-

ise." The Labor and Industrial Relations Commission adopted the Appeals Tribunal's decision by a 2–1 vote.

This appeal follows.

## Standard of Review

**[1]** [A] court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

*Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222 (Mo. banc 2003) (quoting § 287.495.1, RSMo). When the commission incorporates the ALJ's opinion and decision, as in this case, the reviewing court will consider the commission's decision as including those of the Administrative Law Judge. *Copeland v. Associated Wholesale Grocers,* 207 S.W.3d 189, 193 n. 5 (Mo.App. S.D.2006).

## Analysis

■ Walker's second Point Relied On argues that the Commission's Order, finding that he was discharged for misconduct, is unsupported by sufficient competent evidence and must be reversed.[1] With admirable candor, the Department concedes the point.

■ Under § 288.050.2, RSMo, a claimant is disqualified from receiving unemployment benefits "[i]f a deputy finds

---

**1.** Walker's first Point Relied On argues that he was discharged, and did not voluntarily quit his employment. The Commission found, however, that Walker was terminated; his first Point addresses a moot issue.

that a claimant has been discharged for misconduct connected with the claimant's work." Misconduct is defined in § 288.030.1(23), RSMo, as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

The burden of proving misconduct is on the employer. Generally, a claimant has the burden of showing that he or she is entitled to unemployment benefits. However, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim or misconduct connected with work. *Berwin v. Lindenwood Female Coll.*, 205 S.W.3d 291, 294–95 (Mo.App. E.D.2006) (citation and internal quotation marks omitted).

■ This Court has recognized that there is "a vast distinction" between conduct that may support an at-will employee's termination, on the one hand, and conduct that will justify disqualification from unemployment benefits, on the other. *Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13 (Mo.App. W.D.2005).

Under section 288.030.1(23), "each of the criteria for finding misconduct has an element of culpability or intent." Further, "[i]t has been held that in order to be so disqualified, a claimant's work-related misconduct must involve some form of willfulness." [¶] "Willful is defined as '[p]roceeding from a conscious motion of the will; voluntary; knowingly, deliberate; intending the result which actually comes to pass; de-

signed; intentional; purposeful; not accidental or involuntary.'" "To willfully disregard Employer's interests, Employee had to be aware of the requirement and knowingly or consciously violate it." *Murphy v. Aaron's Auto. Prods.*, 232 S.W.3d 616, 621 (Mo.App. S.D.2007) (citations omitted). To establish willfulness, the employer must establish that the employee's "actions were not simply the result of poor workmanship, lack of judgment, or an inability to do the job." *Hoover*, 153 S.W.3d at 13.

■ In applying the relevant statutory provisions, we are mindful that "[t]he purpose of Missouri's unemployment compensation act is to provide benefits to persons who are unemployed through no fault of their own. For this reason, the disqualifying provisions of the act 'are to be strictly construed against the disallowance of benefits to unemployed but available workers.'" *Guccione v. Ray's Tree Serv.*, 302 S.W.3d 252, 256 (Mo.App. E.D.2010) (citations omitted).

As the Department acknowledges, the Appeals Tribunal decision adopted by the Commission contains several fundamental factual errors. First, the Tribunal referee found as a fact that, on June 30, 2009, Walker left his employment "midway through [his] regular eight-hour shift" without notifying a supervisor. But, as the Department concedes, "[t]his statement is contrary to the overwhelming weight of the evidence and is not supported by the competent and substantial evidence in the whole record," in at least two respects. First, Walker testified without contradiction that he did not have a work shift of a definite duration, and certainly not a work shift that was eight hours long. To the contrary, Walker worked no less than ten hours per day in his last three days of employment, despite leaving "early" on the final two days; a time record from February 2009 reflects

similar work days. Second, the uncontroverted evidence (which includes Walker's time sheets) indicates that he left work on June 30 after working almost ten hours, from 5:55 a.m. until 4:25 p.m. with a twenty-nine minute lunch break. He did not leave after four hours of an eight-hour shift. As the Department's appellate brief notes, the Commission's findings concerning Walker's scheduled work shift, and when he left during that shift, "were crucial to the Commission's decision": "[t]here is a big difference between leaving 'midway' through a regular, 8–hour shift and what happened in this case."

The Tribunal's finding that Walker "made no effort" to discharge his obligation to inform his supervisor also materially misstates the evidence. Walker testified without contradiction that on June 30 he went to the office of the facility manager, Toni Braiden, to inform her that he needed to leave, but that she was not there. Walker testified that his immediate supervisor Timothy Liberty was on vacation, and therefore he told Jerry Kerry, who "at times" functioned as a member of management, and had been "in charge" on at least one previous occasion when Braiden was absent.

The referee's finding that there was "[n]o evidence" that Walker "had been unable or too sick to leave a note, or phone the supervisor when he got home," is defective for at least two reasons. First, the referee's statement that the lack of evidence works against Walker suggests that he bore the burden of justifying his conduct, and thereby negating any possibility of misconduct. The burden, however, was on Adesa to show misconduct, and the lack of evidence as to other avenues of communication reasonably available to Walker should work against it, not against Walker. Further, as the Department now concedes,

there is no evidence in the record that Adesa's rules required Walker to take the other steps the Tribunal referee described, or that Walker had been instructed that these other measures were required. Thus, while Walker may have exhibited a lack of judgment by failing to use other means to communicate with his supervisors, the evidence in the record does not support a finding that his failure to do so constitutes willful, conscious disobedience of rules or standards known to him.

Separate and apart from the inaccuracies in the Appeals Tribunal decision adopted by the Commission, our review of the record indicates that the employer here fell well short of satisfying its burden to establish misconduct. Adesa presented two witnesses, Human Resources Generalist Brenda Adkins, and Walker's immediate supervisor, Timothy Liberty.[2] Adkins and Liberty disagreed on the fundamental question of who Walker should have informed of his intention to leave early on June 30, 2009. Adkins testified that Walker should have notified Ms. Braiden or Jake Morris, "which is a supervisor in that moment [sic]." Liberty, on the other hand, testified that *he* was Walker's immediate supervisor at the time, and that Morris was not in the relevant unit of the company at that time. Further, neither Adkins nor Liberty had first-hand knowledge of the circumstances leading to Walker's termination. When asked to describe the events leading to Walker's discharge, Liberty responded that, "[t]o be honest with you, I have—I have no knowledge of anything other than what I was being told what was going on." When the referee followed up by asking Liberty whether Walker had asked for permission to leave early on June 30, Liberty responded that "I cannot answer that honestly without completely—I don't know."

**2.** Adesa also intended to present testimony from facility manager Toni Braiden, but the referee was unable to contact her during the telephone hearing.

On this record, Adesa failed to satisfy its burden of demonstrating that Walker was discharged for misconduct. While the record contains Walker's testimony that he was unable to contact two supervisory employees and therefore informed the individual he believed to be "in charge" in his supervisors' absence, Adesa offered no contrary account of the events leading to Walker's discharge, and its witnesses disagreed even on the fundamental question of who Walker *should have* informed of his desire to leave early. There is no evidence that Walker's supervisors were capable of being contacted; nor was there evidence as to precisely what Adesa's policies required Walker to do when his supervisors were unavailable. *See Guccione,* 302 S.W.3d at 257–58 (reversing Commission finding of misconduct; despite employer rule prohibiting use of climbing spikes, discharged tree trimmer testified that use of climbing spikes was the only safe way of performing a particular trimming job, and employer's rule did not provide employee with "other suitable options," but "left [employee] to make a judgment call as to which imperfect action to take").

In these circumstances, there was not sufficient competent evidence from which to conclude that Walker willfully violated rules or standards of his employer of which he was aware. Given that Adesa bore the burden of establishing misconduct by a preponderance of the evidence, we agree with the Department's concession that misconduct was not proven.

### Conclusion

The Commission's Order Affirming Appeals Tribunal is reversed.

All concur.