Earlean LOMBARDO,
Employee/Appellant,

v.

BRANDT INVESTMENTS, LLC,
Employer/Respondent,

and

Division of Employment Security,
Respondent/Respondent.

No. ED 98967.

Missouri Court of Appeals,
Eastern District,
Division One.

June 18, 2013.

Alan P. Walters, St. Charles, MO, for Employee/Appellant.

Charles B. Jellinek, St. Louis, MO, for Employer/Respondent.

Ninion S. Riley, Jefferson City, MO, for Respondent/Respondent.

SHERRI B. SULLIVAN, Judge.

### Introduction

Earlean Lombardo (Employee) appeals from the decision of the Labor and Industrial Relations Commission (the Commission) denying her unemployment benefits. We affirm.

### Factual and Procedural Background

Employee worked at Brandt Investments, LLC's (Employer) franchise Ace Hardware Store (store) in Maryland Heights, Missouri from 2003 until her employment was terminated on February 27, 2012, at which time she was the Paint Department Manager at the store. On February 24, 2012, an Ace Hardware corporate headquarters district manager received an e-mail from a customer complaining that on that day, he was at the store being assisted by an "older blondish hair lady" employee with a name tag that said "Earl" and "manager," who had said "she lived in St. Peters and she liked it. It wasn't as congested and there aren't as many blacks or foreigners." The customer stated in the e-mail that he was deeply offended by Employee's remark, would not return to the store, would take his business elsewhere and tell his friends and family to do the same.

The district manager contacted the store owner Jeffrey Brandt (Brandt) and forwarded the e-mail to him. Brandt then contacted the store manager Kenny Branscum (Branscum) with regard to this complaint. An investigation ensued in which Branscum interviewed Employee, who

stated she recalled having a conversation with two customers on that particular day but denied using the words specified in the e-mail. Branscum said Employee told him that she did say St. Peters "was not as dark of an area." Branscum stated that he did not ask Employee what she meant by the remark, and she did not elucidate upon it, but he understood it as a euphemism meaning that there are not as many African–Americans there. After speaking with Branscum about the interview, Brandt told him to fire Employee, which he did on February 27, 2012.

On February 28, 2012, Employee filed a claim for unemployment benefits, which Employer protested. On March 19, 2012, a deputy (Deputy) with the Division of Employment Security (Division) denied unemployment benefits, finding that Employee was discharged for misconduct connected with work in that she "was discharged because she made a racial remark to a customer. Harassment of any type is not permitted in the workplace."

On March 21, 2012, Employee appealed the Deputy's decision to the Appeals Tribunal. On April 3, 2012, the Appeals Tribunal conducted a hearing. During the hearing, Employee testified that her "not as dark" remark concerned the lighting near her home in comparison to the poor lighting in the rest of the subdivision. Employee testified further that she provided this explanation to Branscum during the investigation. Branscum denied she provided him such an explanation.

The Appeals Tribunal affirmed the disqualification, making the following findings:

> [Employee] was discharged February 27, 2012 after [Employee] admitted she told the complaining customer that where [Employee] lived "was not that dark."

This essentially corroborated a customer complaint, which salient portions are as follows: "lady (with name badge "Earl" that said manager) said she lived in St. Peters and she liked it, it wasn't as congested and there aren't as many blacks or foreigners."

[Employee]'s explanation offered weeks after separation that she merely was talking about street night lighting was contrived and not credible. She made no such reference at time of discharge despite ample opportunity to do so then. The Appeals Tribunal finds the offensive remarks were willfully uttered in conscious and intentional disregard of known employer rules and interests.

Employee appealed the Appeals Tribunal's decision to the Commission. The Commission affirmed the decision as fully supported by the competent and substantial evidence on the whole record and in accordance with the relevant provisions of the Missouri Employment Security Law and adopted it as its own. This appeal follows.

### Points on Appeal

In her first point, Employee maintains the Commission erred in finding her actions constituted misconduct connected with work because it impermissibly put the burden on Employee to prove her comment was not a conscious disregard of Employer's interest or did not constitute behavior contrary to that which an employer has a right to expect; and that she did not willfully disregard Employer's interests, she was unaware of the requirement and did not knowingly or consciously violate it.

In her second point, Employee maintains the Commission erred in finding she committed misconduct because its decision was not based on competent or substantial evidence, in that testimony was given that

Employee's remark was referring to the lighting in her subdivision; there were no prior incidents of Employee making racist remarks; the customer may have misunderstood Employee's remark; and no one else heard Employee make the remark, all of which supports a finding that Employee did not willfully disregard Employer's interests. Employee also maintains she did not sign an acknowledgement that she received the employee handbook and was not aware of its requirements which she therefore could not knowingly or consciously violate.

## Standard of Review

■■■ We will uphold the award of the Commission if there is sufficient competent and substantial evidence to support the award. *Berwin v. Lindenwood Female College,* 205 S.W.3d 291, 294 (Mo. App. E.D.2006); *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo.banc 2003). We defer to the Commission's resolution of conflicting evidence regarding a factual issue, the weighing of evidence, and witness credibility. *Guccione v. Ray's Tree Serv.,* 302 S.W.3d 252, 256 (Mo.App. E.D.2010). However, whether an employee's conduct constitutes misconduct connected with work is a question of law, which this Court reviews *de novo. Id.* We are not bound by the Commission's conclusions of law or its application of the law to the facts. *Difatta–Wheaton v. Dolphin Capital Corp.,* 271 S.W.3d 594, 595 (Mo. banc 2008). As such, whether the Commission's findings support the conclusion that Employee was guilty of misconduct is a question of law by which we are not bound, and that we review *de novo. Williams v. Enterprise Rent–A–Car Shared Svcs., LLC,* 297 S.W.3d 139, 142 (Mo.App. E.D.2009).

## Discussion

■■■ It is Missouri's declared public policy to set aside unemployment reserves for the benefit of individuals unemployed through no fault of their own. Section 288.020.1.[1] The provisions of Section 288.020 *et seq.* are intended to be construed liberally to accomplish the State's public policy. Section 288.020.2. To execute this policy, "[d]isqualifying provisions are construed strictly against the disallowance of benefits." *St. John's Mercy Health System v. Div. of Employment Sec.,* 273 S.W.3d 510, 514 (Mo. banc 2009).

■■■ An employee is prohibited from recovering unemployment benefits if he is discharged for misconduct connected with work. Section 288.050.2. "Misconduct" is defined by statute as:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Section 288.030.1(23). While an employee generally bears the burden of demonstrating he is entitled to unemployment benefits, the burden shifts to the employer to prove misconduct connected with work when the employer asserts the employee was discharged for misconduct. *Williams,* 297 S.W.3d at 142. The employer must show, by a preponderance of the evidence, that the employee willfully violated the rules or standards of the employer or that the employee knowingly acted against the employer's interest. *Venz v. Convergys*

---

1. All statutory references are to RSMo 2012, unless otherwise indicated.

*Customer Management Group, Inc.,* 326 S.W.3d 554, 557 (Mo.App. E.D.2010).

■ To satisfy Section 288.030.1(23), the Commission must find that an employee's conduct was willful. *See Wieland v. St. Anthony's Med. Ctr.,* 294 S.W.3d 77, 79 (Mo.App. E.D.2009); *Scrivener Oil Co., Inc. v. Div. of Employment Sec.,* 184 S.W.3d 635, 641 (Mo.App. S.D.2006). An employee's willful violation of the employer's reasonable work rule constitutes misconduct. *Noah v. Lindbergh Inv. LLC,* 320 S.W.3d 212, 216 (Mo.App. E.D.2010).

We address Employee's two points on appeal collectively. Employee claims the Commission impermissibly put the burden on her to prove her comment did not constitute misconduct. Employee also claims because she testified that her comment was not racist or at least not willfully so in disregard of Employer's policy and interests, the Commission's finding of misconduct was unsupported by competent and substantial evidence.

Employee maintains that once she offered up her innocent explanation of what she meant by "not as dark of an area," and suggested the customer must have misunderstood what she said, the burden should have shifted to Employer to show that Employee was discharged for misconduct. We find that Employer carried its burden of showing by a preponderance of the evidence that Employee was discharged for misconduct. *Venz,* 326 S.W.3d at 557. The customer's e-mail specifically stated that Employee said she liked where she lived in St. Peters because "it wasn't congested and there aren't as many blacks and foreigners." The e-mail was read aloud at the hearing and Brandt testified to it as well. Once Employee denied using the words set forth in the e-mail, the issue became one of credibility for the Commission. We do not second-guess the credibility determinations of the Commission. *Guccione,* 302 S.W.3d at 256.

Employee also maintains she admitted saying to the customer that the area in which she lived was "not as dark of an area," but offered a non-racist explication of the comment. Branscum testified he understood the comment as a euphemism meaning that there were not as many African–Americans there. Branscum's interpretation is bolstered by the fact that Employee offered up the statement as a comparison to or in lieu of the customer's version of her statement when Branscum confronted her about it. Again, the dichotomy between Employee's explanation of the remark and the interpretation of Employer and the customer presents an issue of fact as well as of credibility and weighing of evidence for the Commission, which we do not disturb on appeal. *Guccione,* 302 S.W.3d at 256. The Commission clearly found the customer's and Employer's version of the meaning of the remark more credible than Employee's, and thus Employer carried its burden in establishing that Employee made a racist remark, a factual finding uncontestable on appeal.

Further, Employer offered evidence that the remark was not only in poor taste, but also clearly not in Employer's interests, as the customer indicated in the e-mail he was taking his business elsewhere because of it and was advising his friends and family to do so as well. The remark was also in violation of Employer's expectations of its employees and company policy as set forth in the following excerpt from pages 17–18 of "Brandt & Sons Ace Hardware Associate Handbook," a copy of which was provided to Employee upon Employer's acquisition of the store in December 2009:

SEXUAL AND UNLAWFUL HARASSMENT

It is the policy of Brandt & Sons Ace Hardware to maintain a work environment that prohibits the harassment of associates in any form by any other associate, vendor, customer or other person while the associate is engaged in company business on Brandt & Sons Ace Hardware premises or outside of the workplace. It is the responsibility of every associate to recognize the rights of others. The management team will respond promptly and confidentially to all complaints of harassment. If a team member becomes aware of harassment, whether it affects them or someone else, they should promptly tell management about it. Associates can contact Kenny, Jeff or Tammy.

Harassment can involve a wide range of unwanted behavior. There can be ethnic, racial, sexual, disability, age, marital status, veteran and religious harassment or harassment directed to members of other legally protected groups. Harassment can result from the conduct of someone in management toward an associate; one associate toward another; or associates and non-associates toward each other. Harassment can apply to conduct at the workplace or conduct off the premises after hours. Among the main forms of harassment are verbal harassment (threats, derogatory comments, slurs or epithets), physical harassment (assault, touching or interference), visual harassment (posters, cartoons, pictures or drawings), and innuendos or rumors, just to name a few.

. . .

Harassment results from these types of unwelcome conduct when:

. . .

The conduct has the purpose or effect of unreasonably interfering with someone's work performance or creating an intimidating, hostile or offensive working environment.

. . .

Associates who engage in harassment, retaliation or other violations of this harassment policy are subject to corrective action up to and including suspension or discharge.

Brandt testified that Employee, as an assistant manager of the store, was not only provided the handbook, but also briefed on it and told its general policies in an orientation session held when Brandt acquired the store. Employee's comment violated Employer's policies regarding a harassment-and discrimination-free environment and work rules in this regard, as well as its reasonable expectation that its employees would not make racist comments to its customers. Based on the foregoing, we find Employer carried its burden of showing that Employee's comment was against its interest and violated its rules, expectations and standards.

The Commission found Employee's version of her remark and innocuous explanation of it contrived and not worthy of belief. Employee's denial of the fact that she made the statement and obfuscation of its true meaning indicate she knew what she did was wrong, and thus the Commission did not err in finding her misconduct deliberate and willful. Employee's arguments that (1) there were no previous incidents of her making racist comments; (2) Branscum was surprised to learn that Employee had made such a comment; and (3) no one other than the customer heard the comment, are all irrelevant to the ultimate fact of whether Employee made the racist remark at issue that day. Also, the fact that Employee did not acknowledge by signature that she had received and/or read the employee handbook does not constitute proof that Employee did not know making a racist comment to a customer

was against Employer's policy and expectation and in disregard of its interest.

Based on the foregoing, we find that the Commission's decision was supported by substantial and competent evidence. *Berwin*, 205 S.W.3d at 294. Points I and II are denied.

### Conclusion

The Commission's decision is affirmed.

CLIFFORD H. AHRENS, P.J., and GLENN A. NORTON, J., concur.