

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| AMY J. RUHL, | ) | No. ED110399 |
| | ) | |
| Respondent, | ) | Appeal from the Labor and Industrial |
| | ) | Relations Commission |
| vs. | ) | |
| | ) | |
| K.A.S. ENTERPRISES, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| DIVISION OF EMPLOYMENT | ) | |
| SECURITY, | ) | Filed: December 27, 2022 |
| | ) | |
| Respondent. | ) | |

Kelly C. Broniec, P.J., Philip M. Hess, J., and James M. Dowd, J.

### Introduction

In this unemployment compensation case, appellant K.A.S. Enterprises (K.A.S.), a used-car dealership, appeals the Labor and Industrial Relations Commission's decision that respondent Amy Ruhl is not disqualified from unemployment benefits because she was fired, but not for misconduct. K.A.S. brings three points on appeal: (1) that Ruhl is ineligible for benefits because she committed unemployment compensation fraud by collecting funds under the Pandemic Paycheck Protection program[1] while simultaneously collecting unemployment benefits; (2) that

---

[1] This program was created by the Coronavirus Aid, Relief, and Economic Security (CARES) Act enacted in response to the Covid-19 pandemic. Pub. L. No. 116-136 (2020). The CARES

the Commission's findings as to the date of Ruhl's last day of work and whether and when Ruhl tested positive for Covid-19 are not supported by substantial evidence in the record; and (3) that the Commission's conclusion that Ruhl's discharge was not for misconduct is erroneous.

We deny K.A.S.'s first point for two reasons. First, inasmuch as the Commission did not address K.A.S.'s claim that Ruhl's alleged fraud rendered her ineligible under section 288.040 or disqualified under section 288.380, that claim is not ripe for our review. In addition to that impediment, K.A.S.'s brief, which cites as its sole legal authority a Missouri Department of Labor press release, fails to demonstrate that Ruhl in fact engaged in fraud.

As to Point II, we affirm because we will not second-guess the Commission's factual findings and credibility determinations regarding Ruhl's last day of work and positive Covid-19 test. Finally, as to Point III, there was competent and substantial evidence in the record that Ruhl was discharged on July 13, 2020, but that the discharge was not for misconduct since K.A.S. failed to prove that Ruhl committed misconduct, Covid-19-related or otherwise, that directly resulted in her termination. As a result, we affirm the Commission's decision.

**Background**

In January 2005, Amy Ruhl began working as a sales representative for K.A.S. at its dealership located on Kingshighway Boulevard in St. Louis, Missouri. Fifteen years later, on March 21, 2020, K.A.S. joined businesses around the world by shutting its doors due to the emerging Covid-19 pandemic.

K.A.S. did not oppose its employees' receipt of unemployment benefits during the initial closure. On May 17, 2020, however, K.A.S. began issuing to employees, including Ruhl, funds

---

Act empowered the U.S. Small Business Administration (SBA) to offer to small businesses emergency loans for up to eight weeks of payroll costs. *Id.*

from a loan K.A.S. received from the federal Paycheck Protection Program (PPP). K.A.S. directed its employees to cease drawing unemployment benefits while receiving PPP funds based on a press release issued by the Missouri Department of Labor.[2]

In June 2020, K.A.S. re-opened to a staggered work schedule with each of its three sales representatives, including Ruhl, working three consecutive days every two weeks in order to foster social distancing and minimize Covid-19 transmission. As employees returned to work, K.A.S. ceased issuing PPP funds.

On July 5, 2020, Ruhl fell ill and tested for Covid-19, the results of which came back positive on July 7. Ruhl worked on July 6 but testified she did not work on July 7 or any later date because she quarantined at home for fourteen days.

Ruhl was scheduled to work again on July 14. But, according to Ruhl's testimony, on July 13, K.A.S.'s general manager, Amanda Elliott, texted Ruhl that her services were no longer needed and that she should not come back to work. Ruhl did not return to her position with K.A.S. after that day.

On March 21, 2021, Ruhl filed her claim for unemployment benefits with the Missouri Division of Employment Security. K.A.S.'s owner and manager, Christina House, protested Ruhl's claim stating (1) that Ruhl resigned voluntarily, and (2) that Ruhl was ineligible for benefits because she committed unemployment fraud by continuing to draw unemployment benefits while also receiving PPP paychecks. On June 8, 2021, the Division deputy found Ruhl disqualified because she voluntarily quit her employment without good cause attributable to the work or to K.A.S.

---

[2] *Missouri Offers Guidance on Paycheck Protection Program Payments Made to Unemployed Workers*, MO. DEP'T OF LAB. & INDUS. REL. (May 16, 2020), https://labor.mo.gov/news/press-releases/missouri-offers-guidance-paycheck-protection-program-payments-made-unemployed.

Ruhl appealed the deputy's determination to the Division's Appeals Tribunal. An appeals referee conducted a telephone hearing attended by both Ruhl and House, who appeared on behalf of K.A.S. The referee described the issues before the Appeals Tribunal as (1) whether Ruhl quit or was discharged, and (2) if she was discharged, whether the discharge was for misconduct. On November 19, 2021, the Appeals Tribunal reversed the deputy's determination upon a finding that Ruhl was discharged on July 13, 2020, but not for misconduct. K.A.S. filed an application for review to the Commission. On January 25, 2022, the Commission affirmed, adopting the decision of the Appeals Tribunal. This appeal follows.

**Standard of Review**

Our review of the Commission's decision is governed by the Missouri Constitution and section 288.210 of the Missouri Employment Security Law. We review whether the Commission's decision is "authorized by law" and "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18. Under section 288.210,[3] we may modify, reverse, remand for rehearing, or set aside the Commission's decision if it is found (1) that the Commission acted without or in excess of its powers; (2) that the decision was procured by fraud; (3) that the facts found by the Commission do not support the decision; or (4) that there was not sufficient competent evidence in the record to support the decision. When, as here, the Commission adopts the decision of the Appeals Tribunal, we consider that decision to be the Commission's for purposes of review. *Walker v. John J. Smith Masonry Co.*, 654 S.W.3d 123, 126 (Mo. App. E.D. 2022).

In the absence of fraud, we accept the Commission's factual findings so long as they are supported by competent and substantial evidence in the record. *Mickles v. Maxi Beauty Supply,*

---

[3] All statutory references are to the Revised Statutes of Missouri (2016).

*Inc.*, 566 S.W.3d 274, 277 (Mo. App. E.D. 2019).  Whether competent and substantial evidence supports the award is determined by examining the evidence in the context of the whole record. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

We give deference to the Commission's "resolution of conflicting evidence regarding a factual issue, the weighing of the evidence, and the credibility of witnesses."  *Smith v. Greyhound Bus Company*, 477 S.W.3d 55, 59 (Mo. App. E.D. 2016) (citation omitted). Therefore, "[i]f the Commission has reached one of two possible conclusions as to a finding of fact, the reviewing court will not reach a contrary conclusion even if the court could reasonably do so."  *Hoeft v. True Manufacturing Company, Inc.*, 604 S.W.3d 337, 339 (Mo. App. E.D. 2020).

Questions of law are reviewed *de novo*.  *Difatta-Wheaton v. Dolphin Cap. Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008).  "Whether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law." *Fendler v. Hudson Services*, 370 S.W.3d 585, 589 (Mo. banc 2012) (internal quotation omitted).

**Discussion**

**Point I**

We first turn to K.A.S.'s contention that the Commission erred in awarding Ruhl unemployment benefits because she committed fraud by simultaneously drawing unemployment benefits and PPP loan funds which rendered her ineligible for unemployment benefits.  We are unpersuaded for two reasons.

First, the issue is not ripe for our review.  *Placzek v. Division of Employment Security,* 49 S.W.3d 717, 719–20 (Mo. App. S.D. 2001).  In *Placzek*, the Commission found that the claimant had "good cause to reject suitable work" under section 288.050.1(3) and was therefore not

5

disqualified from receiving unemployment benefits. 49 S.W.3d at 719. On appeal, the employer argued that the claimant was ineligible for benefits because she was not "available for work" as required under 288.040. *Id.* at 720. The Court determined that this issue was not ripe for review because it was "never addressed by a deputy of the Division of Employment Security or by the Commission." *Id.* Furthermore, as the Missouri Supreme Court has long held, "[a]n issue appropriate for, but not addressed with the [C]ommission, cannot be litigated on appeal." *St. John's Mercy Health System v. Div. of Emp't Sec.*, 273 S.W.3d 510, 516 (2009).

A review of the record here reflects only furtive efforts on the part of K.A.S. to raise this fraud claim. In its initial protest letter in response to Ruhl's benefits claim, K.A.S. raised the fraud allegation but the deputy did not address it, focusing instead only on whether Ruhl voluntarily quit or was fired. In response to Ruhl's appeal of the deputy's decision to the Appeals Tribunal, K.A.S. did not raise the fraud allegation nor did the Appeals Tribunal address it in its decision. Then, in its application for review to the Commission, K.A.S. raised the issue but the Commission's decision, which adopted the decision of the Appeals Tribunal, again did not address the fraud claim. Because the issues before the Commission were only whether Ruhl voluntarily quit or was discharged, and if she was discharged, whether it was for misconduct, our analysis is constrained to those issues alone. *Boles v. Div. of Emp't Sec.*, 353 S.W.3d 465, 467 (Mo. App. W.D. 2011).

Second, even if it was ripe for our review, K.A.S. has failed to adequately brief the issue. In its brief, K.A.S. has failed to direct this Court to any relevant and controlling legal authority that demonstrates that Ruhl is ineligible for benefits because she in fact committed unemployment compensation fraud. "An appellant is required to develop the issue raised in its point relied on in the argument portion of the brief." *Wheeler v. Pinnacle Auto Protection, Inc.*,

6

413 S.W.3d 721, 730 (Mo. App. E.D. 2013). K.A.S. failed to do so when, in lieu of relevant legal authority, it directed this Court to a press release from the Missouri Department of Labor[4] which, though informational, we do not find to be legal authority. "When an appellant fails to support a point with relevant legal authority or argument beyond conclusory statements, the point is deemed abandoned." *Wheeler v. Pinnacle Auto Protection, Inc.*, 413 S.W.3d 721, 730 (Mo. App. E.D. 2013).

Point I is denied.[5]

## Point II

In its second point, K.A.S. argues that the Commission's factual findings (1) that Ruhl's last day at work was July 6, 2020, and (2) that Ruhl tested positive for Covid-19 around that date and was told to quarantine, are not supported by competent and substantial evidence in the record. It appears that the only possible significance of these factual disputes would be to impeach Ruhl's credibility as a witness. However, we do not determine whether witnesses are credible, the Commission does. *Lombardo v. Brandt Investments, LLC*, 400 S.W.3d 890, 894 (Mo. App. E.D. 2013).

Laying aside the dubious relevance of whether Ruhl's last day was July 6 or July 7, 2020, to the factual question of whether she was terminated on July 13, 2020, we defer to the Commission, which found credible Ruhl's testimony that her last day was July 6, 2020. The

---

[4] *Supra* note 2.

[5] Section 288.380 sets out the proper method through which the Division may determine that an individual has committed unemployment compensation fraud. Under this section, "after the discovery of facts indicating fraud, a deputy shall make a written determination that the individual obtained or denied unemployment benefits by fraud." Section 288.380.9. A party wishing to challenge the deputy's determination regarding fraud can initiate an appeal in the manner set forth in section 288.190. Here, K.A.S. should have but did not challenge the deputy's failure to address its allegation of fraud on the part of Ruhl.

7

same applies to the Commission's credibility finding that Ruhl tested positive for Covid-19 on July 7, 2020. Under our standard of review, these factual findings are "uncontestable on appeal." *Id*.

Point II is denied.

## Point III

To resolve the employer's third point on appeal, we must determine whether there was competent and substantial evidence in the record to support the Commission's findings (1) that K.A.S. fired Ruhl by text message on July 13, 2020, and (2) that such discharge was not for "misconduct," as that term is defined in section 288.030.1(23). We find the record fully supports the Commission's findings in both instances.

We first address the Commission's finding that Ruhl was discharged. "Whether an employee quits or is discharged may be determined by examining whether the employer or the employee committed the final act severing the employment relationship." *Menley v. JJF & C, LLC*, 637 S.W.3d 687, 690 (Mo. App. E.D. 2021) (internal quotation omitted). Again, Ruhl testified that she received a text message from K.A.S. on July 13, 2020, informing Ruhl that she was terminated. We acknowledge that the Commission also had before it testimony from K.A.S. that sought to contradict Ruhl's testimony in this regard. As stated, we defer to the Commission's finding that Ruhl's testimony was credible, and that her testimony constitutes competent and substantial evidence of her discharge. *Lombardo*, 400 S.W.3d at 894.

We turn then to the Commission's finding that Ruhl's discharge was not for misconduct. "A claimant is not entitled to unemployment benefits if the claimant . . . was discharged for misconduct connected with the claimant's work." *Cook v. Accord Building Services, LLC*, 481 S.W.3d 893, 901 (Mo. App. E.D. 2016); Section 288.050.2. Generally, the claimant "bears the

8

burden of demonstrating that he or she is entitled to unemployment benefits," however, "when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work." *Weppner v. Shade Tree Serv. Co.*, 520 S.W.3d 524, 531 (Mo. App. E.D. 2017).

There are four statutory criteria for determining whether the employee committed misconduct, each of which requires "an element of culpability or intent," such that "the claimant's actions amounted to a conscious disregard for the interests of the employer or constituted behavior contrary to that which an employer has a right to expect." *Hubbell Mechanical Supply Co. v. Lindley*, 351 S.W.3d 799, 811 (Mo. App. W.D. 2011); Section 288.030.1(23). However, "[t]here is no bright-line test for determining misconduct, and such a determination depends on a thorough review of the facts and circumstances of each incident as well as the context in which it occurred." *Weppner*, 520 S.W.3d at 531. Importantly, "[i]n determining whether an unemployment compensation claimant was discharged for misconduct connected with work, the focus is on 'the event having as its direct and immediate consequence the claimant's unemployment.'" *Barron v. Div. of Emp't Sec.*, 435 S.W.3d 654, 660 (Mo. App. W.D. 2014) (quoting *Evans v. Div. of Emp't Sec.*, 354 S.W.3d 220, 227 n.3 (Mo. App. W.D. 2011)).

Here, there is competent and substantial evidence supporting the Commission's conclusion that K.A.S. failed to establish that misconduct led to Ruhl's discharge. While K.A.S. now claims that Ruhl engaged in misconduct by attending work while positive with Covid-19 in violation of its policies, this assertion misconstrues its burden on this issue. K.A.S. failed to demonstrate that *at the time* it discharged Ruhl, it did so for a Covid-19-related reason or that it even knew about her supposed Covid-19 status. K.A.S. admitted that it was unaware of Ruhl's

9

positive Covid-19 test until the very day of the hearing. Moreover, the record demonstrates that Ruhl's last day was July 6, 2020, and she did not become aware of her test results until July 7. It follows that Ruhl's Covid-19 status could not have been the reason for her discharge and was not "the event having as its direct and immediate consequence [Ruhl's] unemployment." *Barron*, 435 S.W.3d at 660. There is no evidence in the record to suggest that Ruhl's termination was the result of misconduct, Covid-19-related or otherwise.

Point III is denied.

## Conclusion

For the reasons stated above, we affirm the Commission's decision awarding Ruhl unemployment benefits.

_____
James M. Dowd, Judge

Kelly C. Broniec, P.J., and
Philip M. Hess, J. concur.