Bryan DOBBERSTEIN, Appellant,

v.

CHARTER COMMUNICATIONS, INC., and Division of Employment Security, Respondents.

No. ED 89313.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 26, 2007.

850

Paul L. Dobberstein, Jr., Saint Louis, MO, for appellant.

Dwayne Jefferson, Division of Employment Security, Jefferson City, MO, for respondent.

Charter Communication, Inc., Saint Louis, MO, for respondent acting pro se.

## *OPINION*

GLENN A. NORTON, Judge.

Bryan Dobberstein ("Claimant") appeals the decision of the Labor and Industrial Relations Commission ("Commission") denying him unemployment benefits on the grounds that he was discharged for misconduct connected with his work. *See* Section 288.050.2 RSMo Supp.2005.[1] We re-

---

1. All statutory references are to RSMo Supp. 2005.

verse.[2]

## I. BACKGROUND

Claimant was employed by Charter Communications, Inc. ("Employer") as a trouble ticket management representative from October 27, 2003, until his termination on June 21, 2006. As a trouble ticket management representative, Claimant was responsible for handling in-bound calls requesting telephone repair service. According to Employer's policy, all calls are to be terminated by the customer. However, by pressing the "release" button on his telephone, a trouble ticket management representative is able to disconnect a customer call. On June 21, 2006, Claimant was informed by his supervisor that because he had "released" twenty-eight phone calls on June 19, he was being terminated.

The Missouri Division of Employment Security ("Division") found that Claimant was disqualified from receiving unemployment benefits because he was discharged by Employer for misconduct connected with his work. Claimant appealed to the Division's appeals tribunal. At the hearing, a representative for Employer testified that all of the calls fielded by Claimant on June 19, 2006, had been recorded. Employer further testified that there were twenty-eight documented instances where Claimant hit the release button on that day. The documentation provided to Claimant at the time of his termination included reports of six of the calls taken by Claimant on June 19. Employer explained that the termination report only included a sampling of the calls released by Claimant because it did not want the corrective action documentation to be four or five pages long. Although Employer claimed to have the complete recording on file, it was not provided to the appeals tribunal.

In Claimant's two-and-a-half years with Employer, he had never been reprimanded for releasing calls. Employer admitted that at the time of his termination, Claimant indicated that he did not know what had happened and asked, "Why would I hang up on customers?" Claimant denies intentionally hitting the release button twenty-eight times on June 19, 2006. Claimant testified that the only time he hit the release button was when the customer hung up but the phone did not disconnect. Claimant also testified that it was fairly common for calls to disconnect while being transferred to or from another department, either because the customer hung up or because the call was dropped due to a telephone difficulty. According to Claimant's estimate, he would normally take eighty to 100 calls during his shift, and of those calls he would typically release two or three.

The Division's appeals tribunal found "credible Claimant's evidence that he did not deliberately prematurely terminate service calls on June 19, 2006." The tribunal determined that Claimant did not "engage in intentional work-related misconduct under Section 288.030.1(24)," and therefore he was not disqualified from receiving unemployment benefits.

Employer filed an application for review to the Commission. The Commission found that on June 19, 2006, Claimant "accidentally or negligently released 25 more customer phone calls than normal." Based on the evidence of the number of releases documented on that day, the Commission found that "Claimant's negligence was of such a degree and recurrence so as to rise to the level of misconduct defined by [section] 288.030.1(24)." The Commission, therefore, reversed the decision of the appeals tribunal, and found that

**2.** We note that neither Respondent filed a brief in this matter.

Claimant was disqualified from receiving unemployment benefits. Commissioner John Hickey dissented from the decision. Claimant appeals.

## II. DISCUSSION

In his sole point on appeal, Claimant argues that the Commission's finding that his actions on June 19, 2006, amounted to misconduct connected to his work was against the weight of the evidence. We agree.

Section 288.050.2 provides that "[i]f a deputy finds that a claimant has been discharged for misconduct with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits." The definition of "misconduct" is set out in section 288.030.1(24):

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer . . . .

Thus, in order to find misconduct on the part of Claimant, we must find a willful violation of the rules or standards of Employer. *Hoover v. Community Blood Center*, 153 S.W.3d 9, 13 (Mo.App. W.D.2005).

While a claimant bears the burden of demonstrating that he or she is entitled to unemployment benefits, "when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work." *Id.* Employer, therefore, bears the burden of proving by a preponderance of the evidence that Claimant "willfully violate[d] the rules or standards of the employer." *Id.* (citations omitted).

The case law makes clear that an employee's violation of an employer's work rule, which may justify his discharge, does not in and of itself warrant a determination of misconduct that would disqualify the employee from receiving unemployment benefits. *Berwin v. Lindenwood Female College*, 205 S.W.3d 291, 295 (Mo. App. E.D.2006). Likewise, poor performance alone does not provide a basis for disqualifying a claimant from receiving benefits. *Id.* Accordingly, absent evidence that Claimant violated Employer's policies by deliberately or purposefully releasing an inordinate amount of calls, he cannot be found to have committed misconduct. *See Dixon v. Division of Employment Security*, 106 S.W.3d 536, 542 (Mo.App. W.D. 2003) (finding that although the claimant's significant lack of concern for accuracy may have been a basis for her discharge, it was not a grounds for disqualifying her from receiving unemployment benefits).

We fail to find substantial evidence that Claimant acted willfully, or in wanton disregard of Employer's interests, when he allegedly released twenty-eight calls on June 19, 2006. The sampling of the phone calls fielded by Claimant on the day in question does not provide any indication that he acted with evil motive in releasing the calls. We agree that the number of released calls seems unusual. However, without more information than the sampling provides, we are unable to find that the sheer number of releases alone indicates negligence of "such a degree and recurrence so as to rise to the level of misconduct" defined by Section 288.030.1(24). In fact, the Commission stated in its findings that "it appears that [Claimant] accidentally or negligently released 25 more customer phone calls than

normal...." We do not believe that accidents or negligence, without a showing of willful intent, can rise to the level of misconduct as defined by section 288.030.1(24). Because Employer has failed to meet their burden of showing that Claimant willfully violated Employer's rules, Claimant is not disqualified under section 288.050.2 from receiving unemployment benefits.

## III. CONCLUSION

We find that the Commission erred in finding that Claimant's actions amounted to misconduct which disqualified him from receiving unemployment benefits. Accordingly, we reverse.

ROY L. RICHTER, P.J. and
CLIFFORD H. AHRENS, J., concur.

Before ROY L. RICHTER, P.J.,
CLIFFORD H. AHRENS, J., and
GLENN A. NORTON, J.