Rickey GADDY, Claimant/Appellant,

v.

AMERIGAS PROPANE, INC. and Division of Employment Security, Respondents.

No. ED 95027.

Missouri Court of Appeals, Eastern District, Division Five.

March 22, 2011.

---

John Ammann, St. Louis, MO, for appellant.

Bart A. Matanic, Jefferson City, MO, for respondents.

GARY M. GAERTNER, JR., Presiding Judge.

## Introduction

Rickey Gaddy (Claimant) appeals from the judgment of the Labor & Industrial Relations Commission (the Commission) denying him unemployment benefits. The Commission adopted the decision of the Appeals Tribunal of the Division of Employment Security (the Appeals Tribunal), which found that Claimant was discharged from his job for misconduct. We reverse the Commission's decision.

## Factual and Procedural Background

Claimant was employed by AmeriGas Propane, Inc. (the Employer) from October 2008 until August 20, 2009. He sustained a serious knee injury in December 2008, for which he received worker's compensation and surgery. Following his surgery, Claimant was released on July 10 to full-duty work with no limitations; however, he believed he was not yet physically able to return to work, and sought treatment from his family doctor, who ordered him off work until July 20 and instructed him to see a specialist, Dr. Anderson. Dr. Anderson ordered him off work until August 10, 2009. Claimant provided his Employer with notes from his doctors detailing their orders. The Employer acknowledged that during the time Claimant was off work, he would check in with his supervisor "periodically."

On August 7, Claimant spoke with his supervisor, Jason Lewis, regarding the possibility of returning to work on light duty only. Lewis indicated that would be possible if it was pursuant to a doctor's orders.[1] The Employer made an appoint-

---

1. At the Appeals Tribunal hearing, Lewis testified AmeriGas policy provided that if an employee produced a Doctor's note identifying a work restriction, a workforce health team would consider the request, and that light

ment for Claimant with Dr. Anderson on August 17, when he planned to inquire about light duty. Claimant used vacation days between August 10 and 17, with the expectation that he would return to light-duty work on August 17 after his appointment. Claimant's telephone records indicate 22 telephone calls between Claimant and the Employer between August 7 and August 17.

On the morning of August 17, however, Dr. Anderson's office contacted Claimant to tell him that the appointment had been cancelled, but that they or the Employer would call him regarding rescheduling. Both Claimant and Lewis denied cancelling the appointment. That same day, Claimant spoke with Lewis for 21 minutes again regarding when Claimant would return to work, and Claimant's need for time to get a release from a doctor for light duty. Claimant stated that he planned to return to work as soon as he got a Doctor's order for light duty. Claimant did not inform Lewis during the conversation that the appointment had been cancelled. Claimant left a message with Dr. Anderson's office on August 18 to see if another appointment had been set up for him, but he did not hear back.

Claimant did not contact Lewis on August 18 or 19. The employment manual (the handbook) stated that employees must notify their supervisor prior to absences, and provided that "[a]bsences of two or more consecutive days without a call to the immediate supervisor will be considered job abandonment." The handbook also provided that during periods of extended illness an employee need not call in daily if excused from doing so by his supervisor. On August 20, the Employer sent Claimant a letter terminating his employment. The letter stated:

We realize and have supported your need to be intermittently away from work since your injury in December 2008. AmeriGas has accommodated your requests for leave to the extent possible with time away from work, most recently from mid July to present. Our records indicated you were provided with a full duty release to return to work as of July 13, 2009 ... and yet you failed to do so. You also failed to contact your supervisor, Jason Lewis to discuss the situation.... When Mr. Lewis asked you about returning to work [on August 17], you still failed to make plans to return to work, ... [and] you have not provided AmeriGas with any Doctor's note indicating that you have any restrictions on your return to work.... Mr. Gaddy, your treating physician did not feel light duty was warranted and directed that you may return to full duty work, without restrictions. By your failing to return when cleared to do so and by refusing to return when you spoke with your manager, you have abandoned your employment with AmeriGas. You employment with AmeriGas is being terminated as of August 20, 2009.

Claimant applied for unemployment benefits on August 25. A deputy for the Division of Employment Security determined that he was not disqualified for benefits, because he was not able to return to work due to a work-related injury. The Employer appealed to the Appeals Tribunal. After a telephone conference, the Appeals Tribunal reversed the deputy's determination, finding that although Claimant did not abandon his job, he was discharged by the Employer for misconduct connected with his work.

Specifically, the Appeals Tribunal found the following. Although Claimant was re-

duty was potentially available, depending on the claimed restriction.

leased for full work duties on July 10, he was still experiencing pain in his knee and continued under the care of his family doctor and a specialist. Pursuant to orders from these doctors, Claimant was off work from July 13 to August 7. Claimant, however, did not keep the Employer apprised of the reason he was off work after August 17, and did not contact the Employer on August 18, 19, and 20. The "failure to keep the employer apprised of the continuing need to be off work is a disregard of the standard of behavior which the employer had a right to expect of him and [is] misconduct as contemplated by the statutory definition."

Claimant timely appealed to the Commission. The Commission affirmed the determination of the Appeals Tribunal. One of the three commissioners filed a dissenting opinion, stating that Claimant's failure to call his employer on August 18 and 19 was poor judgment but not intentional misconduct. This appeal follows.

### Standard of Review

■ We review the Commission's decision in an unemployment compensation case pursuant to Section 288.210 RSMo 2000 to determine whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result. *Partee v. Winco Mfg., Inc.*, 141 S.W.3d 34, 37 (Mo.App. E.D. 2004). We may modify, reverse, remand for rehearing, or set aside the Commission's decision only where: 1) the Commission acted without or in excess of its powers; 2) the decision was procured by fraud; 3) the award is unsupported by the facts found by the Commission; or 4) the record lacks sufficient competent evidence to warrant the making of the award. *Id.*

■ Absent fraud, the Commission's factual findings are conclusive and binding if supported by competent and substantial evidence. *Id.* We defer to the Commission's credibility determinations. *Id.* However, this Court is not bound by the Commission's conclusions of law or its application of the law to the facts, and reviews issues of law de novo. *Guccione v. Ray's Tree Service*, 302 S.W.3d 252, 255–56 (Mo.App. E.D.2010). Whether an employee's actions constitute misconduct related to work is a question of law. *Id.* at 256.

### Discussion

■ Claimant's sole point on appeal alleges that the Commission erred in finding that Claimant engaged in misconduct connected with work because its ruling was not supported by sufficient competent evidence in the record and was erroneous as a matter of law, in that the Employer failed to meet its burden of establishing that it was not apprised of Claimant's absences, or that his actions in failing to report the absences were intentional as required for statutory misconduct. We agree.

Misconduct is defined as:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Section 288.030.1(23). Where an employer alleges the employee was fired for misconduct, the employer bears the burden of demonstrating misconduct by a preponderance of the evidence. *Dobberstein v. Charter Commc'ns, Inc.*, 241 S.W.3d 849,

852 (Mo.App. E.D.2007). Specifically, the employer must show that the employee willfully disregarded the employer's interest or that he knowingly acted against the employer's interests. *Id.* Accidents or negligence without a showing of willful intent cannot rise to the level of misconduct under Section 288.030.1(23). *Id.* at 853.

Here, the Employer did not meet its burden to show that Claimant willfully or knowingly violated the Employer's attendance policy by failing to call in his absences after August 17, thereby committing statutory misconduct. *Dobberstein,* 241 S.W.3d at 852. The facts do not support a finding that Claimant knew of but disregarded his obligation to report his absences between August 17 and 20. The handbook explicitly provided that in cases of extended illness that the employee did not have to call in everyday, and Claimant's supervisor testified that Claimant had been allowed to call in "periodically." The Commission found that, while Claimant had been released for full duty by the worker's compensation doctor, he was still in pain and under the care of two other doctors. These facts suggest that Claimant was still suffering from an extended illness. Considering both the language of the Handbook and his accepted history of periodic reporting, the record failed to establish that Claimant knew he was now required to call in everyday. *See Murphy v. Aaron's Auto. Prods.,* 232 S.W.3d 616, 621 (Mo.App. S.D.2007) (when employer failed to show that employee was aware of expectation, there was no substantial evidence supporting Commission's conclusion the employee committed misconduct).

Likewise, the Commission's conclusion that Claimant did not keep the Employer informed of the reason that he was off work after August 17 is not supported by competent and substantial evidence. *Partee,* 141 S.W.3d at 37. The facts here sharply differ from those in *Moore v. Swisher Mower & Mach. Co.,* 49 S.W.3d 731 (Mo.App. E.D.2001), where the claimant did not show up for work following his arrest, and the employer had no knowledge of the reason for claimant's absences. *Id.* at 740. Rather, Claimant here had kept consistently in contact with the Employer regarding his continuing medical problems. The records show 22 telephone calls between Claimant and the Employer between August 7 and 17. Claimant testified that he spoke with his supervisor on both August 7 and August 17 regarding his intention to return to work once he obtained a light-duty order from a doctor. The Commission did not find Claimant's testimony lacking in credibility. The Employer had scheduled an appointment for Claimant with a specialist on August 17; and, although it was cancelled, the specialist's office had informed Claimant that they or the Employer would reschedule.

Absent evidence that Claimant willfully or intentionally violated the Employer's reporting rules, Claimant cannot properly be found to have committed an act of statutory misconduct. *Murphy,* 232 S.W.3d at 621. Without evidence of this knowledge, there is no substantial evidence supporting the Commission's conclusion that Claimant committed misconduct as defined under Section 288.030.1(23).

There is a "vast distinction" between an employee's violation of a workplace rule that would justify the employee's discharge, and a willful or deliberate violation of such rule that would warrant a determination of statutory misconduct, thus disqualifying the employee for unemployment-compensation benefits. *White v. Wackenhut Corp.,* 208 S.W.3d 916, 918–19 (Mo.App. E.D.2006). The facts here simply do not support the latter. Looking at the whole record, the Commission's decision award is not supported by sufficient

competent evidence. Section 288.210; *Partee,* 141 S.W.3d at 37.

Point granted.

#### Conclusion

We reverse the judgment of the Commission.

MARY K. HOFF, PATRICIA L. COHEN, JJ., concur.