Lenda MUNSON, Appellant,

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. WD 71827.**

Missouri Court of Appeals, Western District.

Oct. 26, 2010.

Martin L. Perron, for Appellant.

Jeannie D. Mitchell, for Respondent.

Before Division Three: JOSEPH M. ELLIS, Presiding Judge, ALOK AHUJA, Judge and KAREN KING MITCHELL, Judge.

JOSEPH M. ELLIS, Judge.

Lenda Munson appeals from an order issued by the Labor & Industrial Relations Commission disqualifying her from receiving unemployment benefits for five weeks based upon a finding that she was terminated from her employment with American Airlines, Inc. for misconduct related to work. For the following reasons, the cause is remanded to the Commission for additional findings.

On May 6, 2009, Munson was employed as a flight attendant for American Airlines, a position she had held for approximately ten years. That day, she was scheduled to work a flight set to depart at 10:15 a.m. from St. Louis Lambert Airport, for which she was supposed to "sign-in" by 9:15 a.m. Because she was running late and would otherwise be late signing-in, Munson pulled up to the drop-off area at the departure zone so she could sign-in and then go park in the employee lot. Leaving an automobile unattended in that zone was prohibited by city ordinance. As Munson got out of her car and began to run inside, a police officer about 100 yards away yelled, "Hey," at her. Munson told the officer she would be right back and was only signing-in. Munson continued inside and managed to sign-in on time. When she got back to her car, the police officer was in the process of writing her tickets for parking in a no-parking zone and for failure to comply with the lawful order of a law enforcement officer.

Munson got into her car and used her cellular phone to call Jerry Roberts, the manager on duty, to inform him she was getting a ticket but would be there in time for departure. The police officer told Munson to get off the phone and get out of the car. According to the officer, Munson put her forearm to his chest and pushed backward. The officer handcuffed Munson, searched her purse, and took her to the airport police detention area. When contacted by Munson's supervisor, Dorothy Clemons, the airport police informed Clemons that Munson had been detained but refused to provide further detail. At approximately 1 p.m., Munson was transported to the St. Louis County jail where she remained until 10 a.m. the following morning.

After being released, Munson left a voicemail message for Peggy Hurlbert, the Base Manager for American Airlines, and informed Hurlbert that she had been released and asked her to return the call. When Hurlbert called Munson back, Munson informed her that she had received a ticket for parking in a no parking zone and a ticket for failing to comply with the lawful order of a police officer. Hurlbert told Munson to come in for a "31–R meeting" on May 11. A "31–R meeting" is a corporate investigative proceeding to determining if disciplinary action should be taken against an employee.

Just prior to the 31–R meeting, Munson's union representative informed her that criminal charges might be filed against her. Munson provided a verbal and written recounting of the events at that meeting.

The following day, Munson was charged in St. Louis County Municipal Court with one count of assaulting a person in violation of city ordinance. The airport police called American Airlines to inform them of the charge pending against Munson.

After obtaining a copy of the arrest report, on May 21, American Airlines convened another 31–R meeting to address what Munson's supervisors viewed to be inconsistencies between her version of the events and the police report. American Airlines believed that Munson had intentionally misrepresented that she had gone directly home after receiving the tickets and hidden the fact that she had been held in police custody for 24 hours. At a further meeting on June 2, American Airlines informed Munson that she was being discharged for dishonesty and misrepresentation of facts.

On June 4, 2009, Munson filed a claim for unemployment benefits. On June 22, 2009, American Airlines filed its letter of protest asserting that Munson had been discharged for misconduct related to work because she had provided American Air-

lines with false information related to the May 6 incident. On July 9, 2009, a deputy for the Division of Employment Security issued his determination that Munson should be disqualified from unemployment benefits for five weeks because she had been discharged for misconduct connected with work. The deputy determined that Munson had provided her employer with false information related to her absence from work on May 6.

Munson filed an appeal of the deputy's determination with the Appeals Tribunal. A hearing was conducted on Munson's claim on August 21, 2009. On August 26, 2009, the Appeals Tribunal issued its decision affirming the disqualification of benefits to Munson. The Appeals Tribunal found that Munson was guilty of misconduct related to work because she had improperly parked in the no-parking zone at the airport. The Tribunal found that this was a willful disregard of the standards of behavior that her employer had a right to expect. The Appeals Tribunal concluded that flight attendants "engaged in an area of employment where military-like discipline is required to preserve human lives," and therefore, "the claimant must be held to a higher degree of care in the exercise of [her] duties." The Appeals Tribunal made no findings related to American Airlines' stated reasons for discharging Munson. Munson timely appealed the decision of the Appeals Tribunal to the Commission. Subsequently, on November 9, 2009, the Commission affirmed the decision of the Appeals Tribunal and adopted that decision as its own.

█ In her sole point on appeal, Munson claims that the Commission's finding that she was discharged for misconduct was not supported by the evidence. As asserted by the Division of Employment Security, however, because the Commission failed to make factual or credibility findings related to the undisputed reason Munson's employer had for discharging her, the Commission's decision precludes meaningful review of Munson's claim.

Our review of the Commission's decisions is governed by § 288.210[1] which states:

> The findings of the commission as to facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

"We will affirm the Commission's decision if we find, upon a review of the whole record that 'there is sufficient competent and substantial evidence to support the [Commission's decision].'" *Higgins v. Missouri Div. of Emp't Sec.*, 167 S.W.3d 275, 279 (Mo.App. W.D.2005) (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)). "[W]e defer to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony." *Martinez v. Nationwide Paper*, 211 S.W.3d 111, 115 (Mo.App. S.D.2006) (internal quotation omitted). "However, we owe no deference to the Commission's conclu-

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

sions of law or application of the law to the facts." *Higgins,* 167 S.W.3d at 279.

 "Pursuant to § 288.050.2, if an individual is fired for misconduct connected with his or her work, that individual may be denied employment security benefits for four to sixteen weeks." *Peck v. La Macchia Enters.,* 202 S.W.3d 77, 80 (Mo. App. W.D.2006) (internal quotation omitted). Section 288.030.1(24) defines "misconduct" as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employees, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

"In general, a claimant bears the burden of demonstrating that he or she is entitled to unemployment benefits; however, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work." *Peck,* 202 S.W.3d at 80 (internal quotation omitted).

American Airlines consistently maintained, from its letter of protest through the evidentiary hearing, that Munson was discharged for dishonesty and misrepresentation of facts related to her detention by the police. No evidence was ever introduced indicating that Munson's firing was due to her leaving her vehicle unattended in the no-parking zone. Indeed, Munson testified that she and other flight attendants had often left their cars in the no-parking area to sign-in, and Munson's supervisor specifically testified that Munson getting a parking ticket and being de-

tained was not a violation of American Airlines policy. Accordingly, the Commission's finding that Munson was discharged for misconduct because she parked in the no-parking zone is wholly unsupported by the record.

The issues presented by the parties were whether Munson had, in fact, been dishonest with her employer in violation of company policy and, if so, whether her dishonesty constituted misconduct. The Commission did not make any findings related to these issues. "Because the Commission did not resolve all of the disputed factual issues, it is not possible to conduct a meaningful review of the Commission's decision in this case." *Dolgencorp, Inc. v. Zatorski,* 134 S.W.3d 813, 820 (Mo.App. W.D.2004). "There cannot be intelligent review of the decision when the Commission fails to address essential factual issues, and its decision must be reversed and the cause remanded so that the Commission can resolve the essential issues." *Id.* at 819–20; *See also Ahearn v. Lewis Café, Inc.,* 308 S.W.3d 294, 297–98 (Mo.App. E.D.2010).

The Commission's order disqualifying Munson from receiving unemployment benefits for five weeks is reversed, and the cause is remanded to the Commission for further proceedings not inconsistent with this opinion.

All concur.