Tab EVANS, Appellant,

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

No. WD 72169.

Missouri Court of Appeals, Western District.

Sept. 27, 2011.

Tab Evans, Appellant pro se.

Jeannie D. Mitchell, Jefferson City, MO, for respondent.

Before: VICTOR C. HOWARD, P.J., and ALOK AHUJA and KAREN KING MITCHELL, JJ.

ALOK AHUJA, Judge.

Tab Evans was an employee of Contract Callers, Inc. He was terminated in June 2009, and applied for unemployment compensation benefits. The Labor and Industrial Relations Commission denied Evans' claim by a 2–1 vote, finding that he had been discharged for misconduct. Evans appeals. Our review of the record reflects that Contract Callers denied that Evans was terminated for the behavior which the Commission found to constitute miscon-

duct; on the other hand, the Commission found that Contract Callers had failed to prove the separate acts of misconduct which it claimed *were* the reason for his discharge. In these circumstances, we conclude that the Commission's decision is not supported by sufficient competent evidence in the record, and reverse its denial of benefits.

## Factual Background

Tab Evans worked for sixteen months as a Field Representative at Contract Callers, which performed services for St. Louis-area utilities. At the time of his discharge, Evans was performing reconnection services, restoring electrical service to Ameren UE customers.

On June 18, 2009, Evans was tasked to reconnect electrical service for an apartment building on Santa Blas Walk in St. Louis. After arriving onsite, Evans tried to access the electrical meter by unlocking a door to the building's basement with a key. The key was difficult to turn. Evans used pliers to attempt to turn the key, which broke the key off in the lock.

Building management asked Evans to remain onsite until a maintenance worker could remove the broken key and open the basement door. Because he was paid on a per-job basis and believed the maintenance work could take several hours, Evans refused to stay. There is a dispute as to Evans' behavior toward building employees before he departed. Building management claimed that Evans was rude and used profanity, which Evans denied.

The management of the Santa Blas Walk apartment building called Ameren UE to complain about Evans. Ameren UE in turn called Bill Short, a Quality Control Supervisor at Contract Callers. Due to this and prior incidents involving Evans' behavior toward its customers, Am-eren UE requested that he no longer service its calls.

Evans testified that, after breaking the key, he called his supervisor, Tim Henry, while still onsite, but received a busy signal. Evans acknowledged that he did not actually speak with Henry until after he had left the Santa Blas Walk apartment for another reconnection job. Evans also testified, however, that after receiving the busy signal on Henry's line he spoke with a dispatcher while still onsite. For his part, Short testified that the first notification he received of the incident was the complaint from Ameren UE.

In consultation with Contract Callers' General Manager, Yancy Emery, Short decided that Ameren UE's request that Evans no longer perform work for it, combined with two prior customer complaints for which Evans had been formally disciplined, justified his discharge. Short completed a written "Supervisor's Statement" at the time of Evans' discharge. The Statement recounted that "[t]he [building's] office manager says that Tab was very rude in stating that he wasn't going to wait before he left. She also claimed that Tab was overheard calling the office personnel 'assholes' as he was standing outside the office just prior to leaving." The Statement concluded:

> After consultation with CCI General Manager Yancy Emery it is decided that due to the continued customer complaints of inappropriate behavior despite numerous counseling sessions, and the damage of reputation to CCI in the community and with Ameren UE as a result of such behavior, your (Tab Evans) employment with CCI is terminated effective today Monday June 21st, 2009.

The Supervisor's Statement made no reference to Evans' alleged failure to contact his supervisor by telephone before leaving the Santa Blas Walk building.

Contract Callers protested Evans' claim for unemployment benefits. The protest contended that Evans was disqualified from receiving unemployment compensation because:

> Mr. Evans was terminated for willful misconduct after an incident he had with one of our customers, and management of an apartment complex. This was the third documented customer complaint that he had with the company. His actions have been deemed a liability to the company and the customers we serve.

Once again, Contract Callers' protest made no reference to Evans' purported failure to contact his supervisor before leaving the job site.

A deputy within the Division of Employment Security found that Evans was discharged for misconduct connected with work. Specifically, the deputy found that "[t]he claimant was discharged because he did not notify a member of management after he broke a client's key in a lock. Company policy states that a member of management must be notified when a client's property is damaged." Evans appealed. Following an extensive telephone hearing at which Evans, Short, Emery, and two other witnesses testified, the Appeals Tribunal affirmed the deputy's determination that Evans' failure to call his supervisor before leaving the Santa Blas Walk apartment constituted misconduct. Although it found that Evans had committed misconduct by failing to contact his supervisor, the Tribunal's decision also found that "[i]t was permissible [for Evans] to use pliers to try to gain access to the area." In addition, the Tribunal's decision specifically found that Contract Callers had failed to prove its claim that Evans had behaved inappropriately toward Ameren UE's customer:

> There was no first-hand testimony of any discourtesy by the claimant to the apartment manager or rude language used in the incident. The claimant's testimony that he was not rude is found to be credible.

The Commission adopted the Appeals Tribunal's decision by a 2–1 vote. Evans appeals.

## Standard of Review

■ Section 288.210[1] specifies that, on review of a Commission decision,

> [t]he findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

While we accord substantial deference to the Commission's resolution of disputed factual issues,

> we do not defer to the Commission's conclusions of law or its application of the law to the facts. In particular, whether the facts found by the Commis-

---

**1.** Statutory citations refer to the RSMo 2000, as updated through the 2010 Cumulative Supplement.

sion support a finding of misconduct is a legal issue, which we review *de novo*. *Schilb v. Duke Mfg. Co.*, 338 S.W.3d 392, 395 (Mo.App. W.D.2011) (citations and omitted).

### Analysis

■ Although Evans asserts four Points Relied On, we address only the fourth, which contends that the Commission's finding of misconduct was not supported by competent and substantial evidence.[2]

Under § 288.050.2, a claimant is disqualified from receiving unemployment benefits "[i]f a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work." Misconduct is defined in § 288.030.1(23) as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

"Under section 288.030.1(23), 'each of the criteria for finding misconduct has an element of culpability or intent.' " *Walker v. Div. of Emp't Sec.*, 333 S.W.3d 517, 520 (Mo.App. W.D.2011) (quoting *Murphy v. Aaron's Auto. Prods.*, 232 S.W.3d 616, 621 (Mo.App. S.D.2007) (other citations omitted)).

■ Generally, a claimant has the burden of showing that he or she is entitled to unemployment benefits. However, when the employer claims that the claimant was discharged for misconduct, the burden shifts to the employer to prove misconduct connected with work. *Schilb*, 338 S.W.3d at 395; *Walker*, 333 S.W.3d at 520.

In this case, the Commission found that Evans was discharged for misconduct consisting of his failure to speak with his supervisor by telephone before leaving the Santa Blas Walk job site. During the telephone hearing, however, Quality Control Supervisor Bill Short repeatedly asserted that Evans' termination was *not* based on his failure to make a timely phone call. In response to Evans' cross-examination asserting that he had in fact contacted his supervisor, Short emphasized that the reason for Evan's discharge was his behavior towards the apartment's personnel, and the Ameren UE complaint this behavior triggered:

Q. ... [I]n the statements to the Division it says that ... the reason for my discharge was willful misconduct, not calling one of my management. But you say that I have called my management. So where—

A. No, the reason ... for your termination is for repeated customer complaints of inappropriate behavior. That is ... the reason for ... your termination.... A pattern of customer complaints, whereby Amer[e]n UE requested that you no longer do work for Amer[e]n UE ... as an employee of [Contract Callers]. And having had it put to us by Amer[e]n UE in that context, we were forced to go ahead and ... make a decision on your ability ...

---

2. The Division of Employment Security moved to dismiss Evans' appeal due to his alleged violation of Rule 84.04's briefing requirements. Although Evans' opening Brief is not a model of clarity or rule compliance, we deny the motion to dismiss because we are able to determine the substance of Evans' argument concerning the sufficiency of the evidence from his briefing.

to stay employed with ... Contract Callers.

Q. ... All right, that's not. The issue's not (unintelligible). The ... issue in the end of what's denying the unemployment benefits, saying that I did not contact the Manager. And you've already said that I did contact my Manager about this issue. So how can it be that ... you're saying in your testimony that I did, ... but then the whole reason was that I did not contact ... my Manager about this issue.

A. No, ... the reason for your termination, once again, okay, is for ... repeated customer complaints of inappropriate behavior. And that is the way that it was represented and sent in [in Contract Callers' written protest].

Yancy Emery, the General Manager who actually ordered Evans' termination, confirmed Short's testimony that Evans' purported failure to timely contact Contract Callers was *not* the basis for his discharge.

I would like to add to my testimony that ... Evans was not terminated due to not following correct policies and procedures at ... Santa Blas. That had really nothing to do with what he was terminated for and what he is building his case upon. But he is being terminated based off of the evidence that we submitted that shows a definite pattern of misconduct dealing with the continued customer complaints over the period of his employment. And that is the reason that he is terminated. And it has very little to do with Santa Blas Walk.

Besides concluding that Evans was terminated for failing to timely contact his supervisor, the Commission also specifically found (apparently based on Evans' repeated hearsay objections) that Contract Callers had failed to prove that Evans

acted inappropriately during the Santa Blas Walk incident. Instead, "[t]he claimant's testimony that he was not rude is found to be credible."

■ Under § 288.050.2, a claimant is only disqualified from receiving unemployment compensation benefits if he or she "has been discharged *for misconduct* connected with the claimant's work." (Emphasis added.) In order to constitute disqualifying misconduct, the behavior at issue must in fact have been the reason for the claimant's termination.

An employee is disqualified from benefits if he *caused* his dismissal by his wrongful action or inaction or his choosing not to be employed. The causation envisioned by the statutes is that having as its direct and immediate consequence the claimant's unemployment.

*Scrivener Oil Co. v. Crider,* 304 S.W.3d 261, 268 (Mo.App. S.D.2010) (citations and internal quotation marks omitted).

Here, the managers who authorized and implemented Evans' discharge specifically denied that he was fired for violating company policy requiring him to contact his supervisor. Instead, Contract Callers' witnesses contended—consistent with the Supervisor's Statement prepared at the time of Evans' discharge, as well as its written protest of Evans' claim—that Evans had been discharged because of the complaint concerning his behavior by the apartment building's management, combined with the prior customer complaints he had received, which resulted in Ameren UE's request that Evans no longer service their customers.

In the face of the employer's denial that Evans was discharged for his failure to call his supervisor, the Commission lacked competent evidence in the record to find that Evans' purported violation of the employer's calling policy constituted

disqualifying misconduct. We faced a similar situation in *Munson v. Division of Employment Security*, 323 S.W.3d 112 (Mo.App. W.D.2010). In *Munson*, a flight attendant was running late for a departing airline flight on which she was scheduled to work. *Id.* at 113. She briefly parked her car in a no-parking zone at the Lambert Airport in St. Louis so that she could report for work on time. *Id.* After signing in with her employer and returning to her vehicle (which she intended to move to the employee parking lot), the employee was engaged in an altercation with a police officer, and was arrested and jailed overnight. *Id.* The employer later investigated the incident, and concluded that the employee had misrepresented the circumstances of her arrest and subsequent detention. *Id.* It informed the employee "that she was being discharged for dishonesty and misrepresentation of facts" in connection with her arrest. *Id.* The employer repeated this reason for the employee's discharge in its written protest of her claim for unemployment benefits. *Id.* at 113–14.

Despite the employer's consistent statements in *Munson* that the employee had been discharged for dishonesty concerning her arrest and detention, the Appeals Tribunal found that the employee had been discharged for a different reason:

> The Appeals Tribunal found that Munson was guilty of misconduct related to work because she had improperly parked in the no-parking zone at the airport. The Tribunal found that this was a willful disregard of the standards of behavior that her employer had a right to expect. The Appeals Tribunal concluded that flight attendants "engaged in an area of employment where military-like discipline is required to preserve human lives," and therefore, "the claimant must be held to a higher degree of care in the exercise of [her]

duties." The Appeals Tribunal made no findings related to American Airlines' stated reasons for discharging Munson. *Id.* at 114. This decision was adopted by the Labor and Industrial Relations Commission. *Id.*

On appeal, we concluded that the Commission's finding of misconduct was not supported by sufficient competent evidence, because it attributed the employee's discharge to a reason different from the one that the employer had consistently asserted.

> American Airlines consistently maintained, from its letter of protest through the evidentiary hearing, that Munson was discharged for dishonesty and misrepresentation of facts related to her detention by the police. No evidence was ever introduced indicating that Munson's firing was due to her leaving her vehicle unattended in the no-parking zone. Indeed, Munson testified that she and other flight attendants had often left their cars in the no-parking area to sign-in, and Munson's supervisor specifically testified that Munson getting a parking ticket and being detained was not a violation of American Airlines policy. Accordingly, the Commission's finding that Munson was discharged for misconduct because she parked in the no-parking zone is wholly unsupported by the record.

*Id.* at 115.

The same reasoning applies here. The Commission found that Evans had been discharged for misconduct for failing to timely call his supervisor concerning the difficulties he was experiencing at the Santa Blas Walk apartment building. The management employees responsible for the decision to terminate Evans specifically testified, however, that this was *not* the reason for Evans' termination. Given the employer's testimony, the Commission's finding that Evans was discharged for mis-

conduct is "wholly unsupported by the record," and must be reversed. *Munson,* 323 S.W.3d at 115.

In *Munson,* we remanded the case to the Commission, because the Commission had failed to make any findings on "[t]he issues presented by the parties": "whether Munson had, in fact, been dishonest with her employer in violation of company policy and, if so, whether her dishonesty constituted misconduct." *Id.* No remand for further factual findings is necessary in this case, however, because the Commission explicitly found that Contract Callers had failed to satisfy its burden of proving that Evans acted rudely or discourteously toward personnel at the Santa Blas Walk apartment building.[3] In these circumstances—where the Commission relied on a ground for termination denied by the employer, and simultaneously rejected the employer's stated reason for termination—there is no basis to deny Evans unemployment compensation benefits, and a remand for further proceedings is unnecessary.

### Conclusion

The Order of Commission Affirming Appeals Tribunal, which denied Evans unemployment compensation benefits, is reversed, and the case is remanded for the entry of an appropriate order awarding Evans unemployment compensation benefits.

All concur.

---

**3.** The Commission made no explicit findings concerning Evans' two prior documented customer complaints. The evidence in the record establishes, however, that the event "having as its direct and immediate consequence the claimant's unemployment," *Scrivener Oil,* 304 S.W.3d at 268, was his alleged misbehavior towards building management at the San-

ta Blas Walk apartment, which led Ameren UE to demand that Evans no longer service its customers. We also note that, as with the Santa Blas Walk incident, Evans objected at the telephone hearing that Contract Callers' evidence concerning the prior incidents was incompetent hearsay.