

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| TRICIA BARRON, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD75934 |
| | ) | |
| DIVISION OF EMPLOYMENT | ) | **FILED:** March 11, 2014 |
| SECURITY, | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Labor and Industrial Relations Commission**

**Before Division Two: Gary D. Witt, P.J., and Lisa White Hardwick and Alok Ahuja, JJ.**

Tricia Barron's employment with Lincare, Inc. was terminated in June 2012. She applied for unemployment compensation. Lincare protested the claim, contending that Barron had been discharged for misconduct. The Labor and Industrial Relations Commission found that Barron's violations of Lincare's attendance policy amounted to misconduct, and that she was therefore disqualified from receiving unemployment compensation benefits. Barron appeals. Because the Commission's Decision fails to make factual findings concerning the justifications Barron offered for her attendance violations, the Commission's decision is reversed, and the case is remanded to the Commission for further factual findings, and for final disposition based on those findings.[1]

---

[1] We express our appreciation to Associate Dean Jeffrey B. Berman, and student John McPherson, of the Appellate Practice Clinic of the University of Missouri-Kansas City School of Law, who represented Barron in this appeal on a *pro bono* basis.

## Factual Background

In May 2011 Barron was hired as a temporary employee by a company known as Med4Home. Although employed by Med4Home, Barron was assigned to work at Lincare as a customer service representative and pharmacy technician. Barron later accepted full-time employment directly with Lincare. She began working as a Lincare employee on September 6, 2011.

At the time that she was hired by Med4Home, Barron was also attending school. Barron informed both Med4Home and Lincare of her school schedule, and told them that the demands of her educational program would prevent her from maintaining a normal full-time work schedule. Lincare initially agreed to accommodate Barron's school schedule.

Barron's supervisor, Customer Service Manager Amy Ellis, testified that "originally [Barron's] school schedule was supposed to go through December 2011," but that "the time from her school just kept being prolonged for her graduation date." Ellis testified that in February 2012, she informed Barron that Lincare could "no longer accommodate a special schedule for her based on her school schedule."

In February 2012, Barron was cited for multiple violations of Lincare's attendance policy, including non-attendance and tardiness for scheduled work shifts. In several instances, Ellis testified that Barron provided Lincare with no prior notice of her tardiness or non-attendance. Ellis testified that, due to her attendance problems in February, Barron received "final written warnings" on February 21 and again on February 27, 2012; the written warnings informed Barron that "if . . . there w[ere] continued . . . issues with her attendance that it could lead to her termination."

Barron completed her educational program on March 17, 2012. After her graduation, Barron was late for work on four additional occasions: she was ten minutes late on May 22, 23,

and 24, 2012; and on June 26, Barron was twenty-one minutes late to work. Ellis testified that Barron was given an additional final written warning on May 24. Following her tardiness on June 26, Barron's employment was terminated on June 27, 2012.

Barron filed a claim for unemployment benefits. Lincare protested the claim. A deputy within the Division of Employment Security initially determined that Barron's discharge was not the result of misconduct connected with work and that she was therefore eligible for unemployment compensation.

Lincare appealed to the Division's Appeals Tribunal. The Tribunal held a telephone hearing on Barron's claim, at which Barron, Ellis, and Lincare's Human Resources Manager Teresa Swope each testified. Following the hearing, the Appeals Tribunal issued a Decision which found that Lincare had an attendance policy of which Barron was aware, and which she violated. The Tribunal accordingly found that Lincare had established a rebuttable presumption of misconduct pursuant to § 288.050.2[2]; it also concluded that Barron had failed to rebut this presumption. The Tribunal's Decision held that Barron's absences and tardiness constituted misconduct connected with work, which disqualified her from receiving unemployment benefits.

Barron applied to the Commission for review. The Commission affirmed the Appeals Tribunal's decision, and adopted the Tribunal's decision as its own. Barron appeals.

**Standard of Review**

> Appellate review of a decision made by the Commission is governed by section 288.210. We may not reverse, remand, or set aside the Commission's decision unless the Commission acted without or in excess of its powers, the decision was procured by fraud, the decision was not supported by the facts, or the decision was not supported by sufficient competent evidence in the whole record to warrant the making of or the denial of the award.

---

[2] Statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2013 Cumulative Supplement.

An appellate court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, *i.e.,* whether the award is contrary to the overwhelming weight of the evidence. In reviewing the Commission's decision, an appellate court must view the evidence objectively, not in the light most favorable to the decision of the Commission. However, on matters of witness credibility and resolution of conflicting evidence, the appellate court defers to the Commission's determinations.

While the appellate court gives deference to the Commission's findings of fact, the court is not bound by the Commission's conclusions of law or the Commission's application of law to the facts.

*Kimble v. Div. of Emp't Sec.*, 388 S.W.3d 634, 638 (Mo. App. W.D. 2013) (citations and internal quotation marks omitted).

## Analysis

## I.

In her first Point, Barron argues that there was not competent and substantial evidence in the record to support the Commission's finding that the attendance policy she was found to have violated was in fact the applicable Lincare policy. We disagree.

The Missouri Employment Security Law provides that a claimant may be disqualified from receiving unemployment compensation benefits "[i]f a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work." § 288.050.2. Misconduct is defined as

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

§ 288.030.1(23).

4

In 2006, the General Assembly amended § 288.050.3 to provide that an employee's violation of an employer's known attendance policy gives rise to a rebuttable presumption of misconduct. Section 288.050.3 provides:

> Absenteeism or tardiness may constitute a rebuttable presumption of misconduct, regardless of whether the last incident alone constitutes misconduct, if the discharge was the result of a violation of the employer's attendance policy, provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based.

We have explained that, under § 288.050.3, "[i]f the misconduct is predicated upon the employee's absenteeism or tardiness, the burden of proving non-misconduct shifts back to the employee, provided the employee received knowledge of such policy prior to the occurrence of any absence or tardy upon which the termination was based." *Hise v. PNK (River City), LLC*, 406 S.W.3d 59, 64-65 (Mo. App. E.D. 2013). In other words,

> The legislature decided that once the employer has established that there is an attendance policy and proves that the claimant had notice of the policy at the time of all the pertinent absences, and that the claimant still exceeded the allowed absences, the burden shifts to the claimant to show that the claimant was not guilty of "misconduct." If the claimant manages to persuade the hearing officer that he or she was the victim of circumstances beyond his or her control, the claimant may prevail. The claimant bears the risk of non-persuasion.

*Johnson v. Div. of Emp't Sec.*, 318 S.W.3d 797, 803-04 (Mo. App. W.D. 2010).

Barron argues that Lincare failed to establish that the attendance policy the Commission found that she violated was the operative Lincare policy. As Barron notes, the record contains excerpts of Lincare's employee handbook. That handbook lists, as a "major infraction" which may subject an employee to immediate termination, "[b]eing absent for three consecutive work days without adequate reason or without notifying your immediate supervisor or other designated representative by the start of your shift or immediately thereafter." The handbook also contains the following guidelines, under the heading "Attendance":

5

> You are expected to report to work at scheduled starting times, and to remain at work, except for your meal period, until quitting time. Should you find you will be absent or late, you must personally speak to your supervisor prior to, or as soon as possible after, your scheduled starting time, giving the reason for the absence or lateness and when you expect to report to work. This will enable your supervisor to assist you, if possible, and to make the necessary arrangements to keep the center operational in your absence. In addition, you should keep your supervisor informed of changes in your circumstances and plans for return to work whenever your absence will be prolonged.

The handbook does not specify any particular consequences for violation of this "Attendance" provision.

Lincare did not rely on the "Attendance" provision of the employee handbook in protesting Barron's claim, and the Appeal Tribunal's Decision does not refer to it. Instead, in arguing that Barron had committed misconduct by violating Lincare's attendance policy, both the employer, and the Appeals Tribunal, relied on a document titled "Attendance Policy Addendum for Med4Home Employees" (the "Policy"). Barron signed the Policy on May 23, 2011, at a time when she was a Med4Home employee detailed to Lincare.

The Policy defines an "occurrence" as:

- Any missed day or period of consecutive days (due to a continuous illness) not previously scheduled as vacation.

  o For multi-day absences for reasons other than illness, such as car trouble, weather etc, each day missed will count as a separate occurrence.

- Any late arrival to work in excess of 30 minutes without 24 hours notice and management approval.

- Any early departures from work without 24 hours notice and management approval.

- The accumulation of 2 late arrivals to work under 30 minutes.

The Policy also provides the following consequences for employees who experience multiple "occurrences":

- Upon the 5th occurrence within any rolling 12-month period, the employee will be issued a written warning.

- 6 occurrences within any rolling 12-month period may result in termination of employment.

- In addition, receiving two written warnings in a calendar year may result in termination of employment.

Barron argues that the Policy conflicts with the provisions of Lincare's employee handbook, and that there is no evidence that the Policy was a *Lincare* attendance policy, or that it applied to Barron after she became a Lincare employee in September 2011. We disagree.

The Policy references the Lincare employee handbook, and makes clear that the Policy supplements the handbook's provisions. Thus, the Policy states that, "[d]ue to the fact that attendance plays such an important role in our business, the following attendance guidelines shall apply to all employees in addition to absenteeism guidelines addressed in the company handbook." It also states that, "[u]pon one year of employment, salary continuation will be paid in accordance with Lincare guidelines provided in the 'About Your Company' handbook." Thus, the Policy expressly provides that it is a supplement to, and operates in tandem with, Lincare's employee handbook. In addition, given that the handbook itself states no specific consequences for violation of its attendance guidelines, there is no inconsistency between the Policy's specific point system and the employee handbook's more general discussion of attendance requirements.

The testimony at the telephone hearing provided sufficient competent evidence for the Appeals Tribunal to determine that the Policy was issued by Lincare, and that it applied to Barron at the time of her attendance infractions (all of which occurred after she had been hired directly by Lincare). Amy Ellis, Lincare's Customer Service Manager and Barron's supervisor, testified that Lincare had a written attendance policy. She specifically testified that the relevant

7

Lincare attendance policy was the "Attendance Policy Addendum for Med4Home Employees," and that the attendance policy was the same "for temp agency workers" and "non-temp workers." The Policy was admitted into evidence, without objection from Barron. Ellis testified that Barron was aware of the Policy, as evidenced by her signature on it. Finally, Ellis testified that Barron's various episodes of non-attendance and tardiness, which occurred between February and June 2012, violated the Policy, and that Barron was issued verbal and "final written warnings" based on her violations of the Policy. Barron acknowledged that she had signed the Policy in May 2011.

While the testimony could have been more fully developed that Barron was advised and aware that the Policy continued to apply to her after she was hired directly by Lincare, even though she initially signed it while employed by Med4Home, we believe it is a reasonable inference from Ellis' testimony that the Policy was in fact the operative Lincare attendance policy at the time of Barron's attendance problems, and that Barron was aware that it applied to her. Although Barron argues that the Policy was issued by Med4Home, not by Lincare, the wording of the Policy, and Ellis' testimony, suggest to the contrary that it was generated by Lincare, and was directed (at least in part) to personnel detailed to Lincare by Med4Home. Barron presented no testimony or other evidence that would indicate that she believed that the attendance policy to which she was subject was anything other than the document she signed in May 2011. The evidence was sufficient to permit the Commission to find that Lincare had an established attendance policy of which Barron was aware. Point I is denied.

## II.

In her second and third Points, Barron argues that the evidence was insufficient to show that she violated the Policy, and that she rebutted the presumption of misconduct for any violations she committed.

8

At the hearing before the Appeals Tribunal, Barron testified that her tardiness in May and June 2012 was due to circumstances beyond her control: parking difficulties at Lincare's facility; and computer problems which delayed her log-in to Lincare's computer system, resulting in her being reported tardy even though she was present at her work station at the beginning of her shift. For its part, Lincare offered the testimony of Barron's supervisor, Amy Ellis. Ellis testified that Barron only referred to parking problems, and never computer issues, to justify her lateness in May and June 2012. Ellis also testified that she conducted walk-throughs at the time Barron's shift began, and that Barron was not physically present at her work station at the beginning of her work shift.

Unfortunately, the Appeals Tribunal's Decision (which the Commission adopted) does not address the parties' factual dispute as to whether parking or computer problems mitigated the culpability of Barron's tardiness on the occasions which ultimately led to her termination. Instead, the Decision finds that Barron's violated the Policy, and that those violations constituted misconduct, because she gave precedence to the demands of her schooling over her work schedule. The Decision states:

> The claimant has failed to rebut the presumption of misconduct found in a knowing violation of the employer's attendance policy because the claimant willfully missed scheduled work to attend to the demands of her school schedule.
>
> The employer has met its burden to prove the claimant's behavior of missing work constitutes misconduct connected with work because the claimant placed the demands of her school schedule above those of her work schedule.
>
> The Appeals Tribunal concludes the claimant was discharged on June 27, 2012, for misconduct connected with work.

In determining whether an unemployment compensation claimant was discharged for misconduct connected with work, the focus is on "the event 'having as its direct and immediate consequence the claimant's unemployment.'" *Evans v. Div. of Emp't Sec.*, 354 S.W.3d 220, 227

n.3 (Mo. App. W.D. 2011) (quoting *Scrivener Oil Co. v. Crider*, 304 S.W.3d 261, 268 (Mo. App. S.D. 2010)). In this case, the events which caused Barron's discharge were her tardiness in May and June 2012. The undisputed evidence establishes that Barron completed her educational program in March 2012, and she did not attempt to explain or justify her tardiness in May and June 2012 based on the competing demands of her schooling. Instead, Barron claimed that her tardiness on those occasions was caused by parking and computer problems. Yet the Appeals Tribunal made no findings as to whether it believed Barron's claims concerning the reasons for her tardiness in May and June, and, if so, whether it believed those explanations were sufficient to rebut the presumption of misconduct which arose by virtue of § 288.050.3.

Thus, the Appeals Tribunal's findings, which attributed the attendance problems which caused Barron's termination to her school schedule, failed to resolve a central factual issue on which the parties presented contrary evidence.

> Because the Commission did not resolve all of the disputed factual issues, it is not possible to conduct a meaningful review of the Commission's decision in this case. There cannot be intelligent review of the decision when the Commission fails to address essential factual issues, and its decision must be reversed and the cause remanded so that the Commission can resolve the essential issues.

*Munson v. Div. of Emp't Sec.*, 323 S.W.3d 112, 115 (Mo. App. W.D. 2010) (internal quotation marks omitted; quoting *Dolgencorp, Inc. v. Zatorski*, 134 S.W.3d 813, 820 (Mo. App. W.D. 2004)); *see also*, *e.g.*, *Wooden v. Div. of Emp't Sec.*, 341 S.W.3d 770, 774 (Mo. App. W.D. 2011).

## Conclusion

The Commission's Order Affirming Appeals Tribunal, which determined that Barron was disqualified from receiving unemployment benefits, is reversed, and the case is remanded to the Commission for the entry of supplemental findings of fact concerning the reasons for Barron's

tardiness in May and June 2012, and a determination of Barron's entitlement to benefits based on those supplemental findings.

_____
Alok Ahuja, Judge

All concur.