

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| MILISSA A. BOHANNA & DIVISION OF EMPLOYMENT SECURITY, | ) ) ) ) | |
| Respondents, | ) ) | WD87312 |
| V. | ) ) | OPINION FILED: JUNE 3, 2025 |
| UNITED FRUIT & PRODUCE COMPANY, | ) ) ) | |
| Appellant. | ) | |

**Appeal from The Labor and Industrial Relations Commission**

Before Division Two: Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and W. Douglas Thomson, Judge

United Fruit & Produce Company ("United Fruit") appeals from a decision by the Labor and Industrial Relations Commission ("Commission") that concluded Milissa A. Bohanna ("Bohanna") was eligible to receive unemployment benefits. United Fruit argues that the Commission's decision is not supported by sufficient, competent evidence and constitutes a misapplication of law because the evidence established that Bohanna voluntary quit her employment and failed to take actions offered by United Fruit to preserve her employment. Finding no error, we affirm.

**Factual and Procedural Background**[1]

Bohanna began working for United Fruit in 2001 as an accounts payable clerk. On November 28, 2023, Bohanna sustained injuries outside of work that caused her to be hospitalized through November 30, 2023, including an injury to her hand that necessitated a cast. Bohanna was released to work on light duty. However, clerical work, which includes the work done by an accounts payable clerk, was the lightest duty work available at United Fruit. As such, Bohanna could not return to work.

United Fruit's Chief Financial Officer ("United Fruit's CFO") testified that she initially covered Bohanna's job duties, but that eventually another United Fruit employee transitioned to accounts payable to do Bohanna's work. United Fruit's CFO admitted that the employee who covered Bohanna's duties worked more quickly than Bohanna.

United Fruit's CFO testified that Bohanna began receiving leave pursuant to the Family and Medical Leave Act of 1993 ("FMLA")[2] on November 28, 2023, so that Bohanna's twelve weeks of unpaid leave expired on February 20, 2024. Bohanna testified that she received FMLA paperwork on January 30, 2024, and returned the completed paperwork to United Fruit shortly thereafter. Bohanna believed that her twelve weeks of FMLA leave began on January 31, 2024.

Bohanna testified that her doctor cleared her to return to work without restrictions beginning February 27, 2024, and had given her a note dated February 21, 2024

---

[1]We view the evidence objectively and not in the light most favorable to the Commission's decision. *Miller v. Div. of Emp. Sec.*, 670 S.W.3d 444, 447 n.1 (Mo. App. W.D. 2023).

[2]29 U.S.C.A. section 2601 *et seq.* (Westlaw through Pub. L. No. 119-5).

reflecting the same. Bohanna testified that, on February 22, 2024, she went to her workplace to hand in the doctor's note and to advise that she could return to work the next week. Bohanna asked to speak to United Fruit's CFO, but because the CFO was unavailable, Bohanna left the doctor's note with another employee. At some point shortly thereafter, Bohanna spoke on the telephone with United Fruit's CFO, who according to Bohanna, offered her a severance package, which included a payment of $10,000. Bohanna refused to accept the severance package because she wanted to go back to work. According to Bohanna's testimony, she asked United Fruit's CFO whether she was being fired, and United Fruit's CFO responded "no," but also told Bohanna that she did not believe Bohanna's hand was "up to par" and noted that the person filling in worked more quickly than Bohanna.

United Fruit's CFO testified that the doctor's note she received from Bohanna merely cleared Bohanna for light duty work, not her regular job duties. United Fruit's CFO testified that, when Bohanna did not return to work at the end of February, United Fruit offered Bohanna the opportunity to obtain medical documentation that would allow her receive accommodations under the Americans with Disabilities Act ("ADA") to allow her to return to work.[3] On March 4, 2024, United Fruit sent Bohanna a letter that stated she had until March 7, 2024, to provide the documentation necessary to begin the process of determining whether Bohanna was eligible for ADA accommodations. Bohanna called United Fruit's CFO on March 7, 2024, to explain that she had already turned in the

---

[3] 42 U.S.C.A. section 12101 *et seq.* (Westlaw through Pub. L. No. 119-5).

paperwork requested by United Fruit. United Fruit's CFO testified that the paperwork already submitted was not the documentation needed for the determination of Bohanna's eligibility for ADA accommodations, and referred Bohanna back to the March 4, 2024 letter. United Fruit's CFO also testified, however, that Bohanna sent her a text on March 7, 2024, that included a picture of the doctor's note stating that Bohanna was eligible to return to work without restrictions on February 27, 2024. United Fruit's CFO claimed that Bohanna never physically brought this note to the United Fruit office, though Bohanna claimed that this was the note she had delivered to United Fruit's offices on February 22, 2024.

It is uncontested that Bohanna was not being paid from and after February 20, 2024 when her FMLA leave (as calculated by United Fruits) expired. Bohanna filed a claim for unemployment benefits with the Division of Employment Security ("Division") on March 5, 2024. United Fruit's protest, filed on March 12, 2024, stated as follows:

> [Bohanna] was not discharged. She has been out on medical leave since 11/27/2023 due to a non-work-related injury. [United Fruit] was in the process of gathering information to determine if additional leave time could be granted over and above her FMLA leave, which has expired, when [United Fruit] received this claim for unemployment benefits. In light of the fact that [Bohanna] applied for unemployment [benefits], [United Fruit] assumes [Bohanna] has decided to voluntarily resign her employment.
>
> In addition to disqualification due to [Bohanna's] decision to voluntarily resign, [Bohanna] should also be disqualified on the basis that she cannot be actively seeking work if she is unable to work due to a medical condition.

United Fruit's CFO also sent Bohanna a letter on March 12, 2024, that indicated the company was considering her unemployment claim as her resignation from employment.

4

The March 12, 2024 letter informed Bohanna that if she believed anything in the letter was inaccurate, she should contact United Fruit's CFO. Bohanna did not respond to this letter.

A Division deputy determined on March 26, 2024, that Bohanna is not disqualified from receiving unemployment benefits because, when she was discharged on February 20, 2024, the discharge was not for misconduct connected with work ("deputy's determination"). United Fruit appealed the deputy's determination to the Appeals Tribunal, arguing that United Fruit "considers [Bohanna's] filing for unemployment to be a voluntary resignation from employment since [the] claim was initiated by [Bohanna] while she was still an employee of [United Fruit]."

An appeals referee held a telephone hearing on April 18, 2024, at which Bohanna and United Fruit participated. At the outset of the hearing, the appeals referee identified the issue before the Appeals Tribunal as follows:

> The issue in today's hearing will be [Bohanna's] separation from work. I will determine if [Bohanna] left work voluntarily or was discharged. If [Bohanna] left work voluntarily, the issue is whether it was for good cause attributable to the work on employer. If [Bohanna] was discharged, the issue will be whether it was for misconduct connected with work.

In addition to the testimony detailed, *supra*, United Fruit's CFO acknowledged that, while Bohanna never returned to work on or after February 21, 2024, Bohanna never informed the company that she was resigning from her position. United Fruit's CFO further admitted that, if Bohanna had not been limited to light duty work, Bohanna would have been able to return to her job on February 21, 2024. Bohanna admitted that she was

5

never told by United Fruit that she was terminated from her position as an accounts payable clerk.

The Appeals Tribunal issued its decision reversing the deputy's determination on April 24, 2024 ("Appeals Tribunal's decision"). The Appeals Tribunal's decision found that no one ever told Bohanna that she was discharged from employment and concluded that Bohanna failed to meet her burden to prove that she left work for good cause attributable to work or her employer, explaining as follows:

> Here, because [Bohanna] did not return to work after a medical leave of absence, that burden has not been met. Specifically, [Bohanna] was released by her doctor to return to work without restrictions on February 27, 2024, but failed to do so. Consequently, [Bohanna] left work without good cause attributable to the work or employer.

Bohanna filed an application for review to the Commission, asserting that despite informing United Fruit's CFO that she had been cleared to return to work without restrictions on February 27, 2024, United Fruit "did not plan to have [Bohanna] return to work due to the belief that [Bohanna] was not ready and that [her] hand was still injured." Bohanna attached copies of the following to her application for review: (1) the doctor's note allowing her to return to work without restricts on February 27, 2024; and (2) letters sent by United Fruit to Bohanna regarding her absence from work.

The Commission issued its decision reversing the Appeals Tribunal's decision on June 12, 2024 ("Commission's Decision"). The Commission's Decision found that "the evidence establishes that [United Fruit] only assumed [Bohanna] voluntarily separated from work when she filed for unemployment benefits," an assumption that "was not valid and should not have been the basis of the Appeals Tribunal's decision." The

6

Commission's Decision found that Bohanna was attempting to return to work after February 20, 2024, pursuant to United Fruit's instructions, and was not being paid during this time. According to the Commission, "[Bohanna] had every right to establish an unemployment claim under these circumstances and her choice to assert her rights to establish a claim should not be construed as taking any action regarding her job status," as claimants have a waiting week in which they are not eligible for benefits, and Bohanna was "merely protecting herself by establishing her benefits." The Commission's Decision found that the cause of Bohanna's separation from work was United Fruit's discharge of Bohanna on February 27, 2024, and that Bohanna was not discharged for misconduct connected with work.

United Fruit appeals.

**Standard of Review**

Section 288.210[4] governs appellate review of decisions made by the Commission as to a claimant's qualification to receive unemployment benefits:

> The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or

---

[4]All statutory references are to RSMo 2016 as supplemented through March 5, 2024, unless otherwise indicated.

(4) That there was no sufficient competent evidence in the record to warrant the making of the award. An appeal shall not act as a supersedeas or stay unless the commission shall so order.

Insofar as the Commission makes factual findings, section 288.210 requires that those findings "shall be conclusive" if those findings are "supported by competent and substantial evidence and in the absence of fraud."

"The question of whether an employee left work voluntarily or was discharged is generally a factual determination" that must be supported by competent and substantial evidence on the record. *Ekres v. Div. of Emp. Sec.*, 641 S.W.3d 411, 417 (Mo. App. W.D. 2022) (quoting *Kimble v. Div. of Emp. Sec.*, 388 S.W.3d 634, 639 (Mo. App. W.D. 2013)). In determining whether a factual determination is supported by competent and substantial evidence, we consider whether the Commission "could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it." *Wattree v. Div. of Emp. Sec.*, 698 S.W.3d 471, 477 (Mo. App. W.D. 2024) (quoting *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012)). We do not view the evidence in the light most favorable to the Commission's decision; instead, we view the evidence and reasonable inferences drawn therefrom objectively, deferring only to the Commission "on matters of witness credibility and resolution of conflicting evidence." *Ekres*, 641 S.W.3d at 417 (quoting *Barron v. Div. of Emp. Sec.*, 435 S.W.3d 654, 657 (Mo. App. W.D. 2014)).

Insofar as the Commission makes conclusions of law or applies law to the facts, our review is *de novo*. *Wattree*, 698 S.W.3d at 477.

8

**Analysis**

United Fruit presents two points on appeal, both challenging the Commission's finding that United Fruit discharged Bohanna from employment. United Fruit's first point on appeal asserts that the Commission's finding that Bohanna was discharged from United Fruit on February 27, 2024, is not supported by competent and substantial evidence ("Point One"). United Fruit's second point asserts that the Commission's Decision misapplied the law in determining that the cause of Bohanna's separation from work was United Fruit's erroneous assumption that Bohanna left work voluntarily ("Point Two").

The Missouri Employment Security Law's[5] purpose "is to provide benefits for persons unemployed ***through no fault of their own***" and does not extend to those claimants "'who voluntarily choose to become idle.'" *Blase v. PricewaterhouseCoopers, LLP*, 687 S.W.3d 923, 297 (Mo. App. E.D. 2024) (emphasis added) (quoting *Belle State Bank v. Lab. Inds. Rels. Comm'n*, 547 S.W.2d 841, 847 (Mo. App. S.D. 1977)). Section 288.050.1(1) provides that a claimant is disqualified from receiving unemployment benefits if she "left work voluntarily without good cause attributable to such work or to the claimant's employer." "Voluntarily" is not statutorily defined, but our Supreme Court has recognized that the plain meaning of the word, as derived from the dictionary, is "proceeding from the will: produced in or by an act of choice." *Difatta-Wheaton v. Dolphin Cap. Corp.*, 271 S.W.3d 594, 598 (Mo. banc 2008) (quoting *Webster's New*

---

[5]Chapter 288.

*International Dictionary* 2564 (1993)). "An employee is deemed to have left work voluntarily when he leaves of his own accord, as opposed to being discharged, dismissed, or subjected to layoff." *Blasé*, 687 S.W.3d at 927 (quoting *McCabe v. ADP Total Source FL XVIII, Inc.*, 653 S.W.3d 420, 424 (Mo. App. E.D. 2022)). In evaluating whether the claimant voluntarily quit her job or was discharged by her employer "[t]he determinative question is whether the employer or employee committed the final act which severed the relationship." *Garland v. Div. of Emp. Sec.*, 684 S.W.3d 740, 745 (Mo. App. W.D. 2024). The claimant is deemed to have voluntarily quit if she "not only does not show up, but also impliedly rejects the employment and the employer by some action such as failing to provide notification of the absence." *Id.*

United Fruit's first point on appeal argues that the Commission's finding that Bohanna was discharged on February 27, 2024, is not supported by competent and substantial evidence. United Fruit argues that the evidence before the Commission demonstrated that Bohanna remained an employee of United Fruit on February 27, 2024; that Bohanna failed to engage in the process to determine whether she is entitled to ADA accommodations; and that Bohanna failed to contact United Fruit after receiving a letter that stated the company believed that Bohanna had voluntarily quit her job given the circumstances. These arguments ignore that the Commission resolved conflicting evidence in Bohanna's favor.

Though United Fruit claimed before the Appeals Tribunal that the doctor's note Bohanna delivered to the company on February 22, 2024, only released Bohanna to light duty work, the Appeals Tribunal expressly found to the contrary. The Commission had

10

the benefit of that finding, and an actual copy of the doctor's note releasing Bohanna to return to work without restrictions on February 27, 2024, when it determined that Bohanna was discharged by United Fruit on February 27, 2024. The evidence before the Appeals Tribunal also included United Fruit's admission that if Bohanna had not been limited to light duty work, Bohanna would have been able to return to her job on February 21, 2024. And, United Fruit's CFO admitted that on March 7, 2024, Bohanna sent a photograph of the February 21, 2024 doctor's note allowing her to return to full-duty work effective February 27, 2024. Bohanna testified that after she dropped off the doctor's note at United Fruit on February 22, 2024, she spoke with the United Fruit's CFO who offered her a severance package, told her that someone else was already performing her job more effectively than she had, and expressed the opinion that the company did not believe Bohanna was "up to par" to return to work. Bohanna testified that she thus did not return to work on February 27, 2024 though released to do so because United Fruit informed her that "somebody else was doing [her] job" so that United Fruit "had nothing for [her] to do." This evidence is competent and substantial evidence that supports the Commission's finding that Bohanna was discharged on February 27, 2024, the day she had been released to return to work without restrictions. We are bound by the Commission's resolution of competing facts. *See Menley v. JJF & C, LLC*, 637 S.W.3d 687, 690 (Mo. App. E.D. 2021) ("When the Commission, as a trier of fact, has reached one of two possible conclusions from the evidence, we will not reach a contrary conclusion even if we might have reasonably done so.").

11

In light of the Commission's resolution of competing evidence in favor of a finding that Bohanna was discharged on February 27, 2024 (which necessarily credits the evidence that Bohanna had been released to return to work without restrictions on that date), it is irrelevant that Bohanna failed to submit paperwork to establish eligibility for ADA accommodations she did not require. Moreover, though United Fruit claims that the evidence establishes that Bohanna was still an employee on February 27, 2024, that "technical" status is immaterial. It is uncontested that Bohanna was not being paid on that date, and had not been paid since February 20, 2024. United Fruit does not challenge the Commission's finding that under those circumstances, Bohanna had every right to initiate unemployment proceedings.

Finally, though Bohanna did not respond to United Fruit's unilateral assertion in its letter dated March 12, 2024, that it viewed her application for unemployment benefits as a voluntarily quit from her employment, that assertion post-dated the date the Commission found Bohanna had been discharged by United Fruit. Bohanna's failure to respond to the assertion is not relevant to whether Bohanna took reasonable measures to preserve her employment, as she had already been discharged by the time she filed for unemployment benefits and by the time she received United Fruit's March 12, 2024 letter.

United Fruit's first point on appeal is denied.

United Fruit's second point on appeal argues that the Commission misapplied the law in finding that the cause of Bohanna's separation from employment was its invalid assumption that she voluntarily quit when she applied for unemployment. United Fruit argues that instead, Bohanna voluntarily departed because she failed to take reasonable

12

steps to preserve her employment. In support of this argument, United Fruits restates its contentions that Bohanna chose not to engage in the ADA accommodations process, chose not to come back to work on February 27, 2024, and chose not to respond to United Fruit's March 12, 2024 letter. We have already addressed these factual contentions in connection with United Fruits' first point on appeal, and need not repeat that discussion.

Moreover, the premise of United Fruit's second on appeal is not supported by the record. The Commission did not find that the cause of Bohanna's separation from employment was United Fruit's invalid assumption that she voluntarily quit when she applied for unemployment. Instead, the Commission found that Bohanna was discharged on February 27, 2024, and that United Fruit's assumption that Bohanna voluntarily quit her employment when she filed for unemployment benefits was invalid. On that basis alone the point is without merit.

Even overlooking the faulty premise underlying United Fruit's second point on appeal, we would otherwise find the as yet unaddressed argument raised in connection with the point to be without merit. United Fruit asserts that the Commission misapplied the law when it ignored Bohanna's undisputed testimony that United Fruit never told her that she was terminated. "While the terms that the parties use to describe cessation of an employee's employment may be instructive, the relevant facts and circumstances are controlling." *Williams v. Dutchtown Care Ctr., Inc.*, 313 S.W.3d 690, 693 n.2 (Mo. App. E.D. 2010) (quoting *Moore v. Swisher Mower & Mach., Co.*, 49 S.W.3d 731, 737-38 (Mo. App. E.D. 2001)). Bohanna's testimony that United Fruit never told her she was

13

terminated, though relevant to determining the cause of Bohanna's separation from employment, was not singularly controlling on that issue. Instead, the Commission was required to consider **all** relevant facts and circumstances before it. *Ekres*, 641 S.W.3d at 417 (holding that whether an employee resigned voluntarily or was discharged is a *factual* determination that must be supported by competent and substantial evidence on the record). The Commission did just that. As discussed *supra*, the Commission's Decision that Bohanna was discharged from employment on February 27, 2024, is supported by competent and substantial evidence, and did not involve a misapplication of the law.

Point Two is denied.

## Conclusion

The Commission's Decision is affirmed.

_____
Cynthia L. Martin, Presiding Judge

All concur

14